641 F.2d 997
 206 U.S.App.D.C. 44
 Elvin B. MILLER,
v.
Langhorne M. BOND, Administrator, Federal Aviation
Administration et al., Appellants.
George K. WILMOTH,
v.
The UNITED STATES of America et al., Appellants.
Richard W. WEESE,
v.
The UNITED STATES of America et al., Appellants.
Joseph J. TOMASSETTI,
v.
The UNITED STATES of America et al., Appellants.
John G. PETERSON,
v.
The UNITED STATES of America et al., Appellants.
V. Kaye MacSPARRAN, Executrix of the Estate of Richard T.
MacSparran, Decedent,
v.
The UNITED STATES of America et al., Appellants.
James J. KELLEY,
v.
The UNITED STATES of America et al., Appellants.
Joseph H. HAUBENSTEIN,
v.
The UNITED STATES of America et al., Appellants.
Earl L. HAYMAKER,
v.
The UNITED STATES of America et al., Appellants.
Paul H. DeMANGE,
v.
The UNITED STATES of America et al., Appellants.
David N. DARLING,
v.
The UNITED STATES of America et al., Appellants.
Lloyd W. COBURN, Jr.,
v.
The UNITED STATES of America et al., Appellants.
David W. ELLIS,
v.
The UNITED STATES of America et al., Appellants.
Richard G. HART,
v.
UNITED STATES of America et al., Appellants.
Louis C. ENGLER,
v.
UNITED STATES of America et al., Appellants.
George H. RUNNER,
v.
UNITED STATES of America et al., Appellants.
William J. CRAFT,
v.
UNITED STATES of America et al., Appellants.
Gary MEYER,
v.
UNITED STATES of America et al., Appellants.
Andrew J. WILLIAMS,
v.
UNITED STATES of America et al., Appellants.
Edward DISHART,
v.
Langhorne M. BOND, Administrator, Federal Aviation
Administration et al., Appellants.
Laurence ALDRICH,
v.
Langhorne M. BOND, Administrator, Federal Aviation
Administration et al., Appellants.
 Nos. 79-1904 to 79-1924.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 4, 1980.
Decided Feb. 5, 1981.
 
 Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Peter E. George and Robert E. L. Eaton, Jr., Asst. U. S. Attys., Washington, D. C., were on brief, for appellants.
 Donald H. Dalton, Washington, D. C., for appellees in Nos. 79-1905 thru 79-1916.
 Thomas F. Bianco, Rockville, Md., for appellees in Nos. 79-1904, 79-1917 thru 79-1924; Daniel B. Jordan, Washington, D. C., was on brief, for appellees in Nos. 79-1904, 79-1917 thru 79-1924.
 Before ROBINSON and WALD, Circuit Judges and JUNE L. GREEN*, United States District Judge for the District of Columbia.
 Opinion PER CURIAM.
 
 PER CURIAM:
 
 1
 The Professional Air Traffic Controllers' Organization ("PATCO") represents a substantial number of the air traffic controllers employed by the Federal Aviation Administration ("FAA"). In late March of 1970, PATCO called a sick-out of those controllers.[1] Extensive disruptions in air service resulted as approximately one quarter of the nation's air controllers reported in sick each day between March 24 and April 14, 1980.[2] These cases are challenges to the FAA's attempts to identify and punish controllers from the Leesburg, Virginia facility who participated in the illegal strike. In each case,[3] the FAA refused to grant sick leave for the plaintiff-appellee's absence during the period of the sick-out,[4] and further ordered his suspension for a period equal to the length of his unauthorized absence.[5] The district court, reviewing a Civil Service Commission ruling upholding the agency, held that the denials of sick leave had been arbitrary and capricious and that the suspensions had been exacted in violation of the applicable regulations.[6] It awarded back pay to the various claimants.[7] The government appeals from this ruling, alleging that the suspensions and disallowals of sick leave complied with both the applicable procedural and substantive requirements. We affirm.
 
 I. THE SUSPENSIONS
 
 2
 Though participation in a strike can be grounds for termination of a federal employee, by March 31, 1970, the FAA had decided that suspension would be a more appropriate punishment for those who took part in the 1970 sick-out. The agency promptly sent a notice detailing the proposed disciplinary measures to all controllers who had been absent from work. See Brief for the Appellants at 11-12 (letter from FAA Administrator Shaffer). Leesburg's facility chief, Wilson, sent his employees a letter outlining the procedure by which he was determining whether absent controllers were ill or on strike. This letter alluded to preliminary decisions which had been reached after consultation with "informal" panels; it suggested that personnel absent during the period of the sick-out submit a completed Aviation Medical Form 31 to the Eastern Region Flight Surgeon in further support of their applications for sick leave. Id. at 13-14. This letter was followed in two weeks by another, the "Notice of Proposed Suspension/Medical Certificates," in which Wilson informed his employees that those who submitted "unacceptable" medical certificates would be suspended for a period equal in length to their unauthorized absence. Wilson again stressed the need for the submission of the Aviation Medical Form 31. Id. at 15-16. He also outlined the criteria by which the agency was evaluating medical certificates. See at 1004-1005, infra. The FAA eventually accepted the medical excuses of approximately 60% of the controllers who had been absent during the strike.
 
 
 3
 Each of the appellees, however, subsequently received an individualized letter similar to the following:
 
 
 4
 Charge: UNAUTHORIZED ABSENCE.
 
 
 5
 Specification : Beginning at the 0700-1500 EST shift on 25 March 1970 you failed to report for your scheduled tour of duty at the Washington Center. Your absence continued through 11 April 1970. Your absence of 14 scheduled work days during this period was not approved by proper authority.
 
 
 6
 The effective dates of the proposed suspension will be designated at a future time by the Chief of your facility.
 
 
 7
 You may reply to this charge personally, in writing, or both, to me or to Mr. Wilson, whom I have designated to receive your reply. You may also submit affidavits in support of your reply. You will be allowed 15 calendar days from the date you receive this letter to submit your reply. Any material or information previously submitted in reply to my letter of 31 March 1970 will be considered.
 
 
 8
 Consideration will be given to extending this period if you submit a request stating your reasons for desiring more time. Full consideration will be given to any reply you submit. If you do not understand the above reasons why your suspension is proposed, contact Mr. Herbert Scurlock, Washington Area Office, for further explanation.
 
 
 9
 As soon as possible after your reply is received, or after expiration of the 15 day limit if you do not reply, a written decision will be issued to you.
 
 
 10
 Brief for the Appellants at 16-17. Some appellees relied on the medical excuses already submitted to defend against the proposed suspension, while others took advantage of the opportunity to submit additional supporting material. After being notified of the final suspension decision several weeks later, all but two petitioned for review of alleged procedural defects[8] in the suspensions before the Civil Service Commission, where the decisions were affirmed.
 
 
 11
 Each appellee then took his case to the district court, where the cases were consolidated. Appellees presented the court with two arguments for the invalidity of the suspension decisions, one substantive and the other procedural. The district court did not reach the question of whether the suspensions constituted arbitrary and capricious agency action because
 
 
 12
 the agency action is nevertheless invalid because of its failure to provide plaintiffs with fair notice of the reasons for their proposed suspensions in compliance with 5 C.F.R. § 752.302.
 
 
 13
 Aldrich v. Shaffer, Civ. No. 71-838, slip op. at 5 (D.D.C. June 5, 1979); J.A. 178. The government appeals from this judgment, arguing that the district court incorrectly construed the controlling regulation.
 
 
 14
 5 C.F.R. § 752.302 governs suspensions of government employees for thirty days or less. It provides employees with the following procedural rights:
 
 
 15
 § 752.302 Procedures.
 
 
 16
 (a) Notice of proposed suspension. An employee whose suspension is sought is entitled to an advance written notice stating the reasons, specifically and in detail, for the proposed action.
 
 
 17
 (b) Employee's answer. An employee is entitled to a reasonable time for filing a written answer to the notice of proposed suspension and for furnishing affidavits in support of his answer. If the employee answers, the agency shall consider the answer in reaching its decision.
 
 
 18
 (c) Notice of suspension. The employee is entitled to notice of the agency's decision at the earliest practicable date. The agency shall deliver the notice of decision to the employee at or before the time the action will be made effective. The notice shall be in writing, inform the employee of the reasons for the suspension, inform the employee of his right of appeal to the appropriate office of the Commission, and inform him of the time limit within which an appeal may be submitted as provided in § 752.304(c).
 
 
 19
 The question presented by this case is whether the letter reprinted above, see at 1001, supra, fulfills the requirement set out in § 752.302(a) of "stating the reasons, specifically and in detail," for the proposed suspensions.
 
 
 20
 The district court held that the letter failed to meet this requirement because it did not specifically inform appellees that "the reason the evidence (submitted in support of sick leave) was rejected was because it was thought to be based on 'subjective' symptoms." Aldrich v. Shaffer, supra, slip op. at 6; J.A. 179. The FAA contends that the court erred for two reasons. First, the FAA argues, the court misconstrued § 752.302(a) when it interpreted the regulation to require notice of more than the most immediate reason for the suspension which in this case consisted of the FAA's determination that the appellees were absent without leave. To require notice of more than this determination, according to the agency, would result in confusing "two related but independent personnel actions a disapproval of sick leave and the imposition of a disciplinary suspension." Brief for Appellants at 41. Secondly, the FAA argues, even if the court's own interpretation of the regulation as requiring a statement of the underlying reasons for the suspensions was one of several plausible interpretations, the court still should have adhered to the agency's equally plausible interpretation of § 752.302(a). Inasmuch as that interpretation was not "clearly wrong," the "great deference" owed to an "agency's interpretation of its own rules" and the "greater deference" due to "its application of those rules to specific fact situations" mandated that the court follow the agency's interpretation of what notice was due appellees rather than its own. Id.
 
 
 21
 Although an agency's interpretation of its own regulations is often of "controlling weight," Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945), this deference is due only when the interpretation is "reasonable and consistent with the regulation." Belco Petroleum Corp. v. FERC, 589 F.2d 680, 685 (D.C.Cir.1978). With all due respect to the FAA and the Civil Service Commission, this court fails to see how, on the facts of this case, any interpretation of § 752.302(a) other than that adhered to by the district court could be considered "reasonable and consistent with the regulations."
 
 
 22
 As even the appellants concede, the purpose of the disputed regulation is to require the FAA to give "sufficient notice of the reasons upon which the proposed suspension was based to enable appellees to defend against the charges." Brief for the Appellants at 43. According to the FAA, the reasons upon which the proposed suspensions were based were no more and no less than the absences noted in the letters, and "it is clear beyond peradventure that the notices ... informed each appellee specifically" of this. Id. at 44. Therefore, the notice enabled each to defend against his suspension by disputing "the fact that they were absent." Id. This interpretation, however, renders nugatory the purported purpose of the regulation to inform an employee why he is being suspended by indulging in a sophisticated game of sentence construction. The core of the dispute here was not over whether the appellees were absent on certain days everyone knew they were but rather whether those absences were or should have been authorized because of medical reasons. As the district court so aptly pointed out, the FAA's failure to inform appellees "specifically and in detail" why their absences were considered unauthorized[9] deprived them of the opportunity "to show that their symptoms were not subjective, or to obtain further evidence of more objective symptoms of illness." Aldrich v. Shaffer, supra, slip op. at 6; J.A. 179. Therefore, appellees were deprived of any opportunity to defend against the crux of the suspension charges.[10] Such a result is clearly inconsistent with the accepted purpose of § 753.302(a) and the district court correctly held against the agency interpretation.
 
 II. SICK LEAVE
 
 23
 Each of the appellees contend that the time missed from work during the period of the sick-out should have been attributed to sick leave. They argue that the FAA's refusal to do so constituted arbitrary and capricious agency action, subject to reversal by this court. The argument has two parts: first, that the medical judgments made were substantively irrational, and second, that the procedures used to reach the decisions were so defective as to render the results arbitrary. The district court held that though "(t)he denial of sick leave by the agency ... is not illegal per se because the burden was on the plaintiffs in the first instance to establish their entitlement to the leave .... (i)n those instances where plaintiffs did submit the necessary certification to the FAA they are entitled to sick leave and the denial of such by the agency was improper." We affirm the lower court's decision on the ground that the agency's decisions were procedurally defective.
 
 
 24
 The Civil Service regulation covering the availability of sick leave, 5 C.F.R. § 630.401, provides:
 
 Grant of Sick Leave
 
 25
 An agency shall grant sick leave to an employee when the employee:
 
 
 26
 (a) Receives medical, dental, or optical examination or treatment;
 
 
 27
 (b) Is incapacitated for the performance of duties by sickness, injury, or pregnancy and confinement;
 
 
 28
 (c) Is required to give care and attendance to a member of his immediate family who is afflicted with a contagious disease; or
 
 
 29
 (d) Would jeopardize the health of others by his presence at his post of duty because of exposure to a contagious disease.
 
 
 30
 The regulation's use of the phrase "shall grant" rather than "may grant" emphasizes the fact that an agency must grant sick leave when requested to do so by any employee falling within one of the four categories set out in the regulation. No agency has the discretion to refuse to grant sick leave to a qualified applicant.
 
 
 31
 The question is how the agency can determine whether an applicant is qualified. A Civil Service regulation, 5 C.F.R. § 630.403, provides some general guidelines for agency decisionmaking:
 
 
 32
 Supporting evidence.
 
 
 33
 An agency may grant sick leave only when supported by evidence administratively acceptable. Regardless of the duration of the absence, an agency may consider an employee's certification as to the reason for his absence as evidence administratively acceptable. However, for an absence in excess of 3 workdays, or for a lesser period when determined necessary by an agency, the agency may also require a medical certificate, or other administratively acceptable evidence as to the reason for the absence.
 
 
 34
 However, according to the Federal Personnel Manual in force at the time of the sick-out,[11]
 
 
 35
 (t)he granting of sick leave in accordance with the controlling regulations is an administrative responsibility. The nature of the evidence required to determine whether an employee was incapacitated must of necessity be left to administrative determination, bearing in mind the possibility of abuse. (23 Comp.Gen. 186).
 
 
 36
 Id. at § 630-23-S4-2b(1). The agency's discretion is limited only by the requirement of "reasonableness." Id. at § 630-23-S4-2c(3). The manual defines "reasonableness" by proffering an example of a reasonable procedure.
 
 
 37
 For example, when an agency's general policy does not require a medical certificate, advance notice should be given to an employee from whom it is decided such certificates will be required, so that if illness occurs he will be on notice that he must immediately obtain the services of a physician or other practitioner.
 
 
 38
 Id. In short, the FAA defines a reasonable procedure to be one in which any affected employee receives advance notice of evidentiary requirements different from those generally required by the agency to establish eligibility for sick leave.
 
 
 39
 We find the agency's sick leave decisions challenged in this case to be arbitrary and capricious because the agency failed to follow a reasonable procedure when deciding on the validity of medical excuses. According to Henceroth's affidavit,[12] he required extra evidence of illness not required as a matter of general policy, yet failed to give any notice of this fact, advance or otherwise, to the affected employees. This behavior was unreasonable according to the Civil Service's own definition of reasonableness; the decisions affected by it are therefore invalid.
 
 
 40
 The FAA's manual on absence and leave[13] sets forth the normal requirements for qualifying for sick leave:
 
 
 41
 Supporting Evidence.
 
 
 42
 (1) Absences of Three Days or Less. Normally, the employee's certification by initialing the time and attendance report will justify a charge to sick leave for absences of three working days or less. Medical certificates may be required for absences of three days or less when an employee is a chronic user of short periods of sick leave, or there is reasonable doubt as to the validity of his request for sick leave. The employee must be notified in writing by the supervisor when medical certificates are required for absences of three days or less, and this restriction remains in effect until revoked in writing.
 
 
 43
 (2) Absences for More Than Three Days. Employees must furnish a medical certificate for absences of more than three workdays. If a physician or practitioner was not consulted, a signed statement from the employee giving the facts about the absence, the treatment used, and reasons for not having a physician may be accepted as supporting evidence by the supervisor.
 
 
 44
 (3) Medical Certificate. A medical certificate is a written statement signed by a registered practicing physician or other practitioner, certifying to the incapacitation, examination, or treatment, or to the period of disability while the patient was receiving professional treatment.
 
 
 45
 Id. at ch. 4 P 34, p. 26. In an ordinary situation, employees need only submit a "written statement signed by a registered practicing physician, certifying to the incapacitation, examination, or treatment, or to the period of disability" (emphasis added) to qualify for sick leave. Each of the appellees granted compensation for sick leave by the district court submitted such a facially valid medical certificate. Each also submitted all of the additional information specified in Aviation Medical Form 31, a follow-up questionnaire sent to each appellee by the examining Flight Surgeon. This supporting evidence was carefully tailored in each case to the FAA's specific informational requests. At all times, the stated policy of the agency was that:
 
 
 46
 (t)he final decision on the proposed suspension (and denial of sick leave) will be based on the adequacy of the supporting evidence (of illness) to include:
 
 1. Incapacitation
 2. Examination or treatment
 
 47
 3. Period of disability (unable to perform job function)
 
 
 48
 Brief for Appellants at 16 (Notices of Proposed Suspension/Medical Certificates).
 
 
 49
 However, according to the Henceroth affidavit, the agency considered another and different factor in those cases in deciding whether to grant sick leave: the existence of "objective symptoms."
 
 
 50
 (T)he diseases or sicknesses which were reported were such that they were lacking in objective evaluation and appeared to rely almost completely upon the recitation of the symptoms by the patient.
 
 
 51
 Affidavit of Henceroth at 2; J.A. 67. Considering evidence of "subjective symptoms" to be "somewhat unimpressive under the circumstances," Henceroth denied sick leave to those employees whose medical certificates failed to reveal the existence of "objective symptoms." Id. at 3; J.A. 68. Indeed, in many cases, the factor of "objective v. subjective symptoms" was the deciding one. See, e. g., id. at 4-5; J.A. 69-70 (decision as to Aldrich); id. at 5; J.A. 70 (decision as to Coburn); id. at 7; J.A. 72 (decision as to Darling); id. at 8; J.A. 73 (decision as to Dishart).
 
 
 52
 Yet, the FAA did not notify the appellees that evidence of "objective" symptoms was a necessary requirement for, or even particularly helpful to, gaining approval of their sick leave requests. No questions pertaining to this factor were included in Aviation Medical Form 31, the questionnaire sent to appellees by the agency to elicit additional supporting evidence; no mention was made of it in any of the informational letters distributed to the employees as a group or those sent individually to the appellees during the suspension process.
 
 
 53
 Without notice of the need to submit evidence of "objective" symptoms, whether a particular employee happened to submit the evidence deemed necessary to qualify for that category became a matter of sheer luck. Decisions based on luck, rather than objective criteria, can only be described as "arbitrary and capricious," and therefore invalid.
 
 III. REMEDY
 
 54
 In the usual case, courts remand procedurally defective agency decisions to the agency for reconsideration in accordance with the proper procedures. These cases, however, have been bouncing back and forth between the agency and the courts for almost a decade. In view of the obvious difficulties inherent in reconstructing ten year old medical evidence, and of the resultant unfairness to the employees who would have to produce at so late a date additional evidence to meet a sick-leave standard of which they had no notice at the time of their absences, we have concluded that the interests of justice are best served by finally disposing of the case by affirming the back pay awards which the district court diligently computed on the basis of the medical certificates proffered by the employees at the time.
 
 
 55
 Judgment affirmed.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a)
 
 
 [1]
 PATCO had previously utilized sick-out and work-to-regulation tactics to press its labor demands while technically complying with the prohibition of strikes contained in 5 U.S.C. § 7311 and 18 U.S.C. § 1918. See Affidavit of Alan L. Dean, Joint Appendix ("J.A.") 41-43. However, in this as in previous instances, the court held the sick-out a de facto strike, and issued a preliminary injunction against its continuance. See United States v. PATCO, Civ. No. 908-70, slip op. at 4 (D.D.C. Apr. 11, 1970); J.A. 61
 
 
 [2]
 See United States v. PATCO, Civ. No. 908-70, slip op. at 2 (D.D.C. Apr. 11, 1970); J.A. 59. The strike affected each facility differently. In Pittsburgh, some shifts reported 100 per cent absenteeism. Id. The normal absenteeism rate is about 4 per cent. Id
 
 
 [3]
 This appeal is a consolidation of twenty-one cases. The appellees and their actions are:
 Laurence Aldrich No. 79-1924
Lloyd Coburn No. 79-1915
William J. Craft No. 79-1920
David N. Darling No. 79-1914
Paul H. DeMange No. 79-1913
Edward J. Dishart No. 79-1923
David W. Ellis No. 79-1916
Louis C. Engler No. 79-1918
Richard G. Hart No. 79-1917
Joseph H. Haubenstein No. 79-1911
Earl L. Haymaker No. 79-1912
James J. Kelley No. 79-1910
Richard T. MacSparran No. 79-1909
Gary F. Meyer No. 79-1921
Elvin B. Miller No. 79-1904
John G. Peterson No. 79-1908
George Runner No. 79-1919
Joseph J. Tomasetti No. 79-1907
Richard W. Weese No. 79-1906
Andrew J. Williams No. 79-1922
 George K. Wilmoth No. 79-1905
 Appellee MacSparren's suit is filed in the name of V. Kaye MacSparren, executrix of the estate of Richard T. MacSparren, decedent.
 
 
 [4]
 Instead, the FAA classified the periods of absence from work as "AWOL" (absence without leave). This classification both deprived the appellees of pay for the periods involved and rendered them susceptible to disciplinary action
 
 
 [5]
 The suspension was to be served at a time convenient to the employer
 
 
 [6]
 The court had previously ruled, in response to appellants' motion to dismiss for lack of jurisdiction, that it had jurisdiction to review the FAA's actions for compliance with any applicable regulations and to insure that they were not arbitrary and capricious. See Aldrich v. Shaffer, Civ. No. 838-71 (D.D.C. Nov. 20, 1973), remanded for reconsideration, No. 75-2266 (D.C.Cir. April 21, 1977) (memo), aff'd on remand, Civ. No. 71-838 (D.D.C. June 19, 1979). Neither party directly attacks that ruling in the instant appeal
 
 
 [7]
 The District Court awarded all the claimants back pay for the time lost to suspension. It awarded most of them back pay for the time listed as AWOL. However, despite the broad language of its opinion, the court apparently upheld the FAA's denial of sick leave in whole or in part in the following cases: Richard MacSparren, No. 79-1909; David N. Darling, No. 79-1914; Earl L. Haymaker, No. 79-1912; Edward Dishart, No. 79-1923; Louis C. Engler, No. 79-1918; James J. Kelley, No. 79-1910; Gary Meyer, No. 79-1921; George Runner, No. 79-1919; Joseph J. Tomassetti, No. 79-1907; Richard W. Weese, No. 79-1906; Andrew Williams, No. 79-1922; and George Wilmoth, No. 79-1905
 
 
 [8]
 The Civil Service Commission had jurisdiction only over the procedural aspects of the suspension decisions. See 5 C.F.R. § 752.302 and 5 C.F.R. § 752.304. An FAA internal grievance procedure, which all but one appellee elected not to utilize, provided for review of both the procedural and substantive merits of the suspension decision
 
 
 [9]
 The appellants agree that the letters notifying appellees individually of their proposed suspensions did not contain a detailed explanation of the agency's rejection of appellees' sick leave claims. According to the FAA's intraagency correspondence, it never intended to include such information. See Brief for Appellants at 16 (Notice of Proposed Suspension/Medical Certificates)
 
 
 [10]
 This is not a case in which the appellees had alternate opportunities to defend against the charge of "unauthorized absence." As the appellants noted in their brief, at 42, "the issuance of the notices proposing suspension, which was by regulation the necessary first procedural step in the subsequent suspension proceedings, also constituted a final personnel action disapproving sick leave."
 
 
 [11]
 FPM Supplement 990-2 (Dec. 31, 1964)
 
 
 [12]
 At the order of the trial court, Stanley Henceroth, the FAA's Area Manager of the Washington Area in 1970, and "the Deciding Official for the first level of administration of the discipline involved in these cases," submitted an affidavit detailing the reasons for each contested decision. Affidavit of Henceroth at 1; J.A. 66. This affidavit has been incorporated into the joint appendix as pp. 66-83
 
 
 [13]
 Federal Aviation Agency, An FAA Handbook: Absence and Leave (Pt. P 3600.2) (8/23/62)