Roy L. SCHAPANSKY, Petitioner,

v.

DEPARTMENT OF TRANSPORTA-
TION, FAA, Respondent.

Appeal No. 83–663.

United States Court of Appeals,
Federal Circuit.

May 18, 1984.

Richard J. Leighton, Washington, D.C., argued for petitioner. With him on brief was Marvin Menaker, Dallas, Tex.; William C. Casano, Washington, D.C., was on reply brief.

Sandra P. Spooner, Washington, D.C., argued for respondent. With her on brief were J. Paul McGrath, Asst. Atty. Gen., and David M. Cohen, Washington, D.C., Director.

Alan F. Greenwald, Deputy Gen. Counsel, and Mary M. Jennings and Marsha E. Mouyal, Washington, D.C., were on Statement in Lieu of Brief for Merit Systems Protection Bd.

Joseph B. Scott and James H. Heller, Washington, D.C., were on brief for amicus curiae.

Donald L. Cox, Louisville, Ky., was on brief for amicus curiae.

Richard Frank, Tampa, Fla., was on brief for amicus curiae.

Before MARKEY, Chief Judge, and FRIEDMAN, RICH, SMITH and NIES, Circuit Judges.

MARKEY, Chief Judge.

Appeal from a decision of the Merit Systems Protection Board (Board), Docket Number DA075281F1130, sustaining the August 26, 1981, permanent removal of Roy L. Schapansky (Schapansky), by the Department of Transportation's Federal Aviation Administration (agency) from his position as Air Traffic Control Specialist at the Air Route Traffic Control Center in Fort Worth, Texas. We *affirm*.

## BACKGROUND

Removal was based on charges of participation in a strike against the United States from August 3 to August 5, 1981, absence without leave for the same period, and violation of the "loyalty and striking" provision of 5 U.S.C. § 7311.[1] Schapansky appealed to the Board's Dallas Regional Office, which sustained the removal on May 14, 1982. On timely petition for review,

---

1. "§ 7311. Loyalty and striking

An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—

(1) advocates the overthrow of our constitutional form of government;

(2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;

(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or

(4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia."

the full Board affirmed the presiding official's decision and sustained Schapansky's removal on October 28, 1982.

### Presiding Official

The presiding official determined that the agency had established by a preponderance of the evidence: (1) that Schapansky was a member of the union, the Professional Air Traffic Controllers Organization (PATCO); (2) that he was aware of the strike by the members of PATCO; (3) that he intended to and did participate in that strike by refusing, in concert with others, to provide his services to his employer; (4) that the agency did not err in applying the statutory provision of 5 U.S.C. § 7513(b)(1);[2] (5) that the agency was correct under § 7513(b)(1) in disregarding the requirement for 30 day notice before deciding upon and effecting an adverse action because it had "reasonable cause to believe the employee ha[d] committed a crime" and because 18 U.S.C. § 1918[3] makes striking by federal employees a crime; (6) that once an agency invokes § 7311, removal of the employee is mandatory; and (7) that removal was required to promote efficiency of the service under § 7513(a).

### Board

Before the Board, Schapansky reiterated his basic contention that no evidence supported a finding that he had participated in the strike. He conceded that he was absent without leave on August 3, 4, and 5, 1981, and that his absence was a protest against the same conditions that other PATCO members were protesting by withholding their services. Schapansky said other PATCO members were "thinking different", but he viewed his absence as a legal protest and PATCO's "lawyers would take care of it." The presiding official, in finding that Schapansky was aware of and intended to participate in the strike, cited Schapansky's own testimony that he voted "yes" when a "strike vote" was taken by PATCO members on August 2, 1981, and that the agency had informed him that the strike would be in violation of law. The Board found no basis on which to disagree with the presiding official's finding or assessment of the hearing testimony.

The Board noted that Schapansky in his petition for review neither challenged the presiding official's discrediting of his assertion that he was absent because of harassment and fear for his personal safety, nor

**2.** Section 5 U.S.C. § 7513 provides, in pertinent part:

"§ 7513. Cause and procedure
(a) Under regulations prescribed by the Office of Personnel Management, an agency may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service.
(b) An employee against whom an action is proposed is entitled to—
　(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;
　(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;
　(3) be represented by an attorney or other representative; and
　(4) a written decision and the specific reasons therefor at the earliest practicable date."

**3.** "§ 1918. Disloyalty and asserting the right to strike against the Government
　Whoever violates the provision of section 7311 of title 5 that an individual may not accept

or hold a position in the Government of the United States or the government of the District of Columbia if he—

　(1) advocates the overthrow of our constitutional form of government;

　(2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;

　(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or

　(4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia;

shall be fined not more than $1,000 or imprisoned not more than one year and a day, or both."

asserted any other basis on which his absence might be determined to have been involuntary.

Schapansky challenged the agency's consideration of a photograph showing him among PATCO picketers, saying he is not shown as carrying a sign and that nothing showed him among picketers on August 3 or 4. The Board said that voluntary withholding of services in concert with others, not physical presence on a picket line, constitutes the gravamen of the charge. Schapansky's challenge of the photograph was therefore found unavailing.

On the merits of the basic charges, the Board held that the agency had proved the charges, that Schapansky had not rebutted the evidence of his knowledge of the strike and of his intent to withhold his services along with other PATCO members, and that he had made no showing that his absence was due to any factor other than strike participation.

Objecting to the absence of a 30-day advance written notice, Schapansky argued that he had not been formally charged with or convicted of a crime and that the agency had not proved his intent to do anything illegal. The Board pointed out that it has not adopted criminal charges, convictions, or proof of illegal intent as prerequisites to a finding of "reasonable cause to believe" that a crime had been committed in support of a decision to disregard the notice provision. The Board went on to say that because § 1918 makes participation in a strike against the United States a felony punishable by up to one year and a day of imprisonment, and because Schapansky's conduct evidenced such participation, it would sustain the finding that the agency had reasonable cause to believe that a crime had been committed and that disregard of the notice requirement was thus permissible under § 7513(b)(1).

Reading § 7311(3) as mandating removal when a charge of striking is sustained, the Board rejected Schapansky's contention that removal was unreasonable. The Board further noted the self-evident gravity of Schapansky's offense in participating in a strike against the Government, that by its very nature such action disrupts the Government's performance of its mission, that it is a criminal offense, that the position of air traffic controller is highly sensitive, the incumbent being directly responsible for the safety of passengers, and that that responsibility entails maintenance of the confidence of his employer and the public who rely on him. The Board viewed a controller's intentional and ongoing abdication of that responsibility, by participating in the strike and by continuing to strike despite the President's 48-hour grace period,[4] as constituting particularly egregious conduct which destroyed the controller's unique relationship of trust. The Board therefore held that the agency's removal penalty cannot be deemed excessive, disproportionate, or unreasonable.

Sustaining the finding that removal will promote the efficiency of the service, § 7513(a), the Board determined that § 7311 reflects the belief of Congress that removal of an employee for participation in a strike promotes that efficiency, and that there is a clear and direct relationship of such misconduct to the employee's satisfactory accomplishment of his duties and to the agency's ability to fulfill its mission.

■ *Issues* [5]

(1) Whether the Board correctly determined that the agency proved the

4. At approximately 11:00 a.m. E.D.T. on August 3, 1981, the President of the United States announced:

This morning at 7:00 a.m. the union representing those who man America's air traffic facilities called a strike.—I must tell those who failed to report for duty this morning they are in violation of the law and if they do not report for work within 48 hours, they have forfeited their jobs and will be terminated.

While more than 1,200 controllers heeded the President's call to return to work; approximately 11,500 continued to strike. 17 Weekly Comp. of Pres.Doc. 845 (August 3, 1981).

5. Because this and nine other "lead" cases involving air controllers were argued before the same panel on the same day, counsel were permitted to present issues which may not have

charges by a preponderance of the evidence.

(2) Whether the penalty of removal was too harsh and unreasonable and should be mitigated.

(3) Whether the removal here was effected with harmful procedural error.

## OPINION

### (1) *The Charges*

In discussing the issues, the briefs of Schapansky and *amici* cite the language of court opinions dealing with matters and questions totally divorced from those in a case dealing with the propriety of the government's action in removing those who strike against it. We join enthusiastically in the general desire for symmetry in law and procedure, and nothing here said is thought to make a fundamental difference in either (except perhaps for recognition that mitigation is irrelevant when striking is proved, *infra*). Nonetheless, the facts of this case, and the differences between them and those in other types of cases, are such as to render without purpose a discussion here of the many other types of cases cited in the briefs.

■ The Board properly held that though the agency could establish a *prima facie* case of striking by showing an employee's unauthorized absence during a strike of general knowledge and his presence on the picket line, the latter element is not essential, and the charge of striking is proven when it is shown that the employee withheld his services in concert with others, regardless of whether the employee joined a picket line. *See United Federation of Postal Clerks v. Blount*, 325 F.Supp. 879, 884 (D.D.C.), *affirmed*, 404 U.S. 802, 92 S.Ct. 80, 30 L.Ed.2d 38 (1972).

been presented to the Board in the particular case argued by counsel, but which had been presented to the Board in one or more of the lead cases.

Similarly, the court has taken judicial notice, at Schapansky's request, of the materials in his Supplemental Appendix, the Board having considered major segments of that appendix in another lead case.

The Board did not, as *amici* assert, accept mere absence during a strike as proof of the charges. On the contrary, as appears below, it took into account all of the facts and circumstances. The Board's decision was not even remotely "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law ..." 5 U.S.C. § 7703(c).

■ The record demonstrates unequivocally that the strike was well and widely known, that Schapansky knew it was illegal to strike against the government, that he knew FAA considered PATCO's "job action" an illegal strike, that his absence was unexplained, that he never attempted to contact the agency to advise it of any reason for his absence, and that under the circumstances his absence constituted evidence of participation in the strike. Proof of a wide-spread strike of general knowledge, together with proof of Schapansky's absence without authorization or explanation during the strike, must in the practical world constitute at least a *prima facie* case of his participation in the strike.

■ Once an agency has made a *prima facie* showing, the burden of going forward with evidence to rebut that showing necessarily shifts to the employee, who is in the best position to present explanatory evidence to counter that showing. The burden of proving the charge by preponderance of the evidence is and remains throughout upon the agency. The order of presentation, however, is allocated in such a way that each party is required to give evidence in the area in which it has the better access to information. It may be that little countering evidence would be required, where, for example, the *prima facie* case was minimally supported. We need not discuss that relationship here,

Briefs *amicus curiae* were received from three sets of counsel collectively representing many hundreds of air controllers whose cases are described by *amici* as likely to be controlled by the outcome in this case. Issues and arguments presented by *amici* in this case are addressed here.

however, for the *prima facie* case here was more than minimally supported and Schapansky submitted no evidence effective to counter it.

The agency's burden of proof respecting strike participation may be described as a burden of "persuasion", because it has "in form the affirmative allegation" and must bear the burden of persuasion from start to finish. *See,* 9 J. Wigmore, *Wigmore on Evidence* 2486, 2489 (J. Chadbourn rev. ed. 1981).

Schapansky points to language in the Board's opinion in which it appeared to be placing a burden of persuasion on him. It is clear, however, from a reading of the challenged phrase in the context of the entire opinion that the Board in actuality placed a burden of production, not persuasion, on Schapansky following presentation of the agency's *prima facie* case. The Board specifically stated that it required the agency to "ultimately establish" the employee's participation in a strike. Thus the Board did not, as Schapansky asserts, craft some new approach for use in his case.

Absent effective rebuttal, the agency must be held to have carried its burden of persuasion. Schapansky concedes that the agency demonstrated existence of the strike and his absence during it without authorization or explanation. It is undisputed that Schapansky offered no evidence before the Board that his absence was due to other factors. Though that state of the record would have been sufficient, the Board noted additional evidence of Schapansky's strike participation (his "yes" vote on PATCO's strike, his presence on the picket line, and his admission that, simultaneously with his fellow union members who were withholding their services, he withheld his in what he called, after the fact, a "protest").

■ Schapansky's argument that the Board ignored the intent element involved in the striking charge is without merit. Before us, Schapansky says his only offense was absence and that he visited the picket line only out of curiosity. The argument ignores the circumstances which give meaning to his conduct. The Board specifically noted that an intent to strike can be proved by circumstantial evidence. Circumstantial evidence can be more persuasive and conclusive than direct evidence. *Michalic v. Cleveland Tankers, Inc.,* 364 U.S. 325, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). The unrebutted *prima facie* case here constitutes such circumstantial evidence. An employee who did not intend to strike could, under the present circumstances, be expected to advise his employer of the true reasons for his absence at the earliest possible moment. If extraordinary circumstances (not here shown) prevented communication with his employer until the employee was mistakenly charged with strike participation, the employee could certainly be expected to explain his absence when (at the very latest) he responded to the agency's proposal to remove him. Schapansky's intent to withhold his services in concert with others is established on this record.

■ Schapansky is equally incorrect in asserting that proof of the charge requires proof of an employee's specific intent to implement an agreed plan. Neither participation in strike planning nor express agreement with others to perpetrate the strike is a necessary ingredient of proof that a particular employee participated in a strike. If a requirement for proof of intent resides in 5 U.S.C. § 7311, (and we need not and do not decide that question here) proof of general intent suffices. Unexplained absence during a strike of general knowledge establishes that the employee "intended" to strike. The law, like life, recognizes that one may not eat his cake (strike for benefits) and have it too (escape removal when the strike fails by merely denying intent).

In *Moylan v. Department of Transportation FAA,* 735 F.2d 524 (Fed.Cir.1984), also decided today, the *amicus curiae* argues that the Board's theory of proof announced in the present case denied the controllers due process because it retroactively subjected them to a more onerous burden of proof than the Board previously had applied. The amicus' argu-

ment is that the Board's prior standard required proof of active involvement in the strike, such as picketing, to establish a *prima facie* case of striking, and that in Schapansky's case the Board eliminated that additional element of proof.

The *amicus'* argument rests upon an erroneous assumption. There was no earlier rule requiring proof of active involvement in the strike to establish strike participation. Although earlier cases in which strike participation was found involved picketing and other active strike involvement, the Board never held that such activities were an essential element of the proof of strike participation. The Board's decision in the present case did not change the standard of proof necessary to show strike participation, but merely clarified it. Moreover, although the *amicus* in *Moylan* argues that the Board's allegedly new standard of proof denied the controllers a fair opportunity to present evidence under that standard, the *amicus* points to no specific evidence that the controllers would have introduced if they had known that the Board would evaluate their cases under that standard. All of the controllers had a due process opportunity before the Board to introduce evidence that they had not participated in the strike, and many took that opportunity.

The charges of absence without leave and violation of 5 U.S.C. § 7311 are supported by the same evidence found to support the charge of striking.

■ The Board found that the agency proved by a preponderance of the evidence the charges forming the basis for Schapansky's removal. Applying the statutory standard applicable to our review, we hold the Board's decision supported by substantial evidence and not to have been arbitrary, capricious or otherwise not in accordance with law.

### (2) *The Penalty*

Sustaining the agency's determination that discharge was an appropriate penalty, the Board declined to rule on whether it had authority to mitigate it. In light of 5 U.S.C. § 7311, it held that dismissal "cannot be deemed clearly excessive or disproportionate to a sustained charge of striking".

■ Determination of the appropriate penalty is a matter committed primarily and largely to the discretion of the employing agency. *Jones v. United States,* 617 F.2d 233, 236, 223 Ct.Cl. 138 (1980). Only in the exceptional case, in which the penalty exceeds that permitted by statute or regulations or is so harsh that it amounts to an abuse of discretion, may its imposition be overturned. *Weston v. U.S. Department of Housing and Urban Development,* 724 F.2d 943, 949 (Fed.Cir.1983). Whether the court would have chosen a different penalty, had it been making the initial choice, is in the normal case irrelevant. "[P]enalty decisions are judgment calls that should be left to the discretion of the employing agency." *Weiss v. Postal Service,* 700 F.2d 754, 758 (1st Cir.1983). The penalty here was clearly not disproportionate to the offense.

Striking against the government is a grave offense and a violation of the solemn oath an employee signs, as did Schapansky, as a condition of his employment. Striking, moreover, is a criminal offense. *See Jones, supra,* 617 F.2d at 237. It disrupts the functioning of the government itself. In this case, the inescapable and thus intentional goals of Schapansky and his striking cohorts, absent prompt governmental capitulation, were to inflict harm of the highest magnitude upon the national transportation system, to cause great public inconvenience, to injure the national economy, and to place at risk the public safety. *PATCO v. Federal Labor Relations Authority,* 685 F.2d 547, 622 (D.C.Cir., 1982) (Mackinnon, J., *concurring* ). Removal under such circumstances was clearly justified, and the nexus between removal and efficiency of the service is clear.

It is argued that removal of many striking controllers actually injured the air traffic system, which was forced to rely on supervisors and new, rapidly trained con-

trollers. The argument is inappropriate here. Whether the long range efficiency of the service is better served by capitulation, with its risk of encouraging future strikes, or by a temporary reduction in service while new controllers are trained, is solely a policy choice reserved to the executive branch.

Nothing of record supports Schapansky's assertions that the permanent removal penalty should have been mitigated and that mitigation considerations applicable to other types of charges must be applied here. Schapansky cites the length and quality of his past service. However, the gravity and effects of Schapansky's offense are so great, and the statutes relating to strikes against the United States are so unequivocal, that they do not merely limit the extent of appropriate mitigation; they render mitigation irrelevant. Congress has determined that removal is an appropriate penalty for striking against the government. It is therefore not necessary, as *amici* contend, to remand for a more complete record respecting mitigation factors. An individual with the longest and finest record may be removed when found to have irrevocably sullied that record by participating in the strike at bar against the United States. Long and excellent service creates no license to violate a criminal statute against striking, and to violate one's oath taken on the day of employment that one would not strike. Congress cannot be held to have acted unconstitutionally in enabling the United States to refrain from continuing to employ one who strikes against the federal government; nor can that enablement be impeded by mitigating factors that may be applicable to lesser offenses and different circumstances.

Lastly with respect to the penalty, Schapansky has not shown that his removal should be considered in light of the government's failure to remove those who returned to work during the Presidential grace period or "moratorium." Unevenness in application of a penalty is not a ground for invalidating it, *Jones, supra,* 617 F.2d at 238, *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 187, 188, 93 S.Ct. 1455, 1458, 1459, 36 L.Ed.2d 142 (1973). Moreover, the argument relating to returnees does not involve unevenness. Those who returned occupy a status entirely different from that of those who did not. Schapansky could have availed himself of the opportunity (as 1,200 air controllers did), but chose not to do so. The President having established a grace period, no reason exists for considering those who elected to accept the presidential invitation as though they were in the same category with those who disdained it.

Similarly, also, *amici's* reliance on the allegedly less harsh response of the government to earlier and different controller actions (a call-in-sick and a slowdown) which *amici* say the agency considered to have been strikes, is irrelevant. That other government workers have struck and been allowed to return to work, *see Miller v. Bond,* 641 F.2d 997 (D.C.Cir.1981) and *Benson v. Dow,* 520 F.Supp. 231 (W.D.Pa.1981), or that a court may have viewed it permissible under some circumstances to continue government strikers in employment, *see U.S. v. PATCO,* 653 F.2d 1134 (7th Cir.), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981), cannot be viewed as forever binding the government against the removal of any striker under any circumstances. Whether removal is mandatory under 5 U.S.C. § 7311 or 18 U.S.C. § 1918 need not be here decided. Removal is permissible under those statutes and no statute prohibits removal of any who strike against the United States. Beyond differing circumstances surrounding earlier events, nothing in the law requires that its enforcement with less than full vigor in the face of one violation of the law binds the government against full and fair enforcement in the face of a later and distinct violation of that law. Ideal justice, and government personnel regulations, envisage equal treatment of persons similarly situated. Whether those involved in earlier events were similarly situated is not here determinable. What is clear is that mercy and compassion, if such were shown in

response to earlier and differing infractions, should not be forged into handcuffs restricting the government's response to the present strike of air controllers in 1981.

◼ Similarly, *amici's* strong assertion that the Board disregarded here its own approach to determination of the appropriateness of a penalty, *see Douglas v. Veterans Administration,* 5 MSPB 313 (1981) and *Woody v. General Services Administration,* MSPB Docket No. SF07528110028 (June 2, 1981) is unsupported in the record. That the penalty includes a barrier to reemployment as a controller is not unreasonable in view of the statute, 5 U.S.C. § 7311 ("may not accept or hold a position"), and does not require Schapansky's reinstatement as a controller.

We hold that the penalty here was not arbitrary, capricious, or otherwise not in accordance with law.

### (3) *Procedures*

Schapansky says that because his unauthorized and unexplained absence during the strike did not constitute a "reasonable cause to believe" he had committed a crime, his discharge with less than thirty days notice was procedurally defective.

◼ Section 7513(b) makes the normal 30 days' notice unnecessary when the agency has "reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed." As above indicated, 18 U.S.C. § 1918 makes participation in a strike against the government such a crime. Schapansky's unexplained absence during a well known strike established reasonable basis for the agency to believe that he was engaged in such participation and thereby automatically established a reasonable basis for its belief that he had committed the crime of striking against the government. That a second charge, absence without leave, does not relate to a crime is irrelevant. An agency is not required to wait 30 days to respond to an employee's misconduct when that misconduct is reasonably believed to constitute a crime.

◼ Though Schapansky complains of the lack of 30-day notice, he makes no attempt to demonstrate that the shortened time of notice was harmful. The Civil Service Reform Act specifies that only harmful procedural errors may vitiate an agency action. 5 U.S.C. § 7701(c)(2)(A) (Supp.II 1978). To be harmful the error must substantially impair the employee's rights. *Shaw v. Postal Service,* 697 F.2d 1078 (Fed.Cir.1983); *Brewer v. Postal Service,* 647 F.2d 1093, 227 Ct.Cl. 276 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). Nothing of record would indicate that if the shortened time of notice were error (and as above indicated it was not), it impaired Schapansky's rights in any manner.

◼ Schapansky argues that the President's August 3, 1981 announcement was a final decision to discharge him and that the agency's removal proposal did not afford him a meaningful opportunity to reply. *Amici* argue that Schapansky should have been given the right to reply to the President and to demand that the President state his reasons for his action. The argument is without merit.

The President's announcement said those who returned would retain, and those who continued to strike would forfeit, their positions. Some 1200 controllers returned. Having elected to continue on strike, Schapansky could hardly have been surprised when the promised removal notice arrived. There was, contrary to Schapansky's argument, no discharge of Schapansky or of anyone else on August 3, 1981. After August 5, 1981, the agency carefully gave Schapansky all possible opportunities to reply under an entire panoply of rules, procedures, and regulations. Indeed, Schapansky filed three written responses and responded orally. Nothing whatever of record supports Schapansky's implication that he would not have been retained if he had shown a basis for his absence other than participation in the strike.

The President in no manner usurped the authority and responsibility of agency officials to determine whether each individual

had continued to engage in the strike after the August 5, 1981 deadline. In view of the need to continue a safe air transportation system for the public, the President's dispensation was, as has been well described, a "grace" period that "worked" insofar as it enabled 1200 controllers to return promptly to maintenance of that system. One who commits a crime by striking against the government can be seen to have done so from the first moment he withholds his services in concert with others. Schapansky, along with all other striking air controllers, was in this case given a chance to rethink for two days and thereafter was given a full and complete due process opportunity to show that he had not in fact struck against the United States. The President bears a constitutional duty to "take care that the laws be faithfully executed," U.S. Const., Art. II, § 3. His action here was directly within his official responsibility, not merely within its "outer perimeter" as was found permissible in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The President acted here in a manner obviously calculated to balance the public interest in a continuation of air transportation, immediate enforcement of the law, and an opportunity for violators to reconsider. An argument that the President's grace period somehow denied due process comes with poor grace from one who ignored it.

Schapansky cites decisions in contempt actions against PATCO and individuals for noncompliance with court orders to return to work: *Professional Air Traffic Controllers Organization, Air Transport Association of America v. Professional Air Traffic Controllers Organization*, 699 F.2d 539 (D.C.Cir.1983); *PATCO v. Federal Labor Relations Authority*, 685 F.2d 547 (D.C.Cir.1982); *United States v. Phillips*, 525 F.Supp. 1, 8 n. 6 (N.D.Ill.1981); *United States v. PATCO*, 525 F.Supp. 820, 822 (E.D.Mich.1981); *United States v. Haggerty*, 528 F.Supp. 1286, 1296 (D.Colo.1981) and language in opinions accompanying those decisions indicating that return to work was not possible after failure to meet the President's deadline. The citations are irrelevant here. That Schapansky lacked after his deadline a unilateral authority to simply return to work at will, and could not therefore be held in contempt of a return to work order, bears no relation to whether the procedures applied to his removal were proper. That those procedures were guided from agency headquarters, and spelled out that controllers would be removed *if* it were *proven* that they participated in the strike, speaks for, not against, an exercise of care for employee rights under difficult and unusual circumstances.

■ *Amici* assert that the agency's procedures giving Schapansky an opportunity to explain his absence were a "sham" because the agency was "forced" by the President's announcement to fire him. At the same time, *amici* complain that there was disparate treatment because some controllers, having apparently made adequate explanations (described by *Amici* as "settlements"), were not discharged. *Amici* further say: the President's moratorium was an improper exercise of his power to pardon (U.S. Constitution, art. II, § 2 cl. 1); the agency had no power to extend the President's return to work deadline to the first scheduled shift following that deadline; and that the agency failed to notify Schapansky that he would not be removed if he met his next scheduled shift. All of those arguments have been fully considered and found without merit. Lastly, *amici's* assertions concerning the suffering of controllers' families invoke our sympathy; they cannot under the law invoke a reversal.

■ There is no basis whatever for Schapansky's claim that it was improper for the government to adopt a uniform policy of removing each employee whose participation in the illegal strike was proven, or that that policy denied Schapansky a full and meaningful opportunity to reply. Schapansky has not in the slightest demonstrated that any agency officials were unreceptive to evidence that the facts supporting the charge were not as alleged, and, as above indicated, mitigation is not an

issue. The Court of Claims has rejected the argument that an agency's predetermination to remove an employee if the charges against him were proven is improper. *Pascal v. United States*, 543 F.2d 1284, 1289, 211 Ct.Cl. 183 (1976). The court there noted that the "crucial point is that the plaintiff has failed to demonstrate that the [agency] would have been impervious if the proof failed to show that the facts were as charged." *Id.*

We hold that the agency's procedures were in accordance with law and that their application involved no harmful error.

## DECISION

Accordingly, the Board's decision sustaining the August 26, 1981 permanent removal of Schapansky by the agency from his position as Air Traffic Control Specialist at the Air Route Traffic Control Center in Fort Worth, Texas, is affirmed.

AFFIRMED.