Mark R. KUMP, Petitioner,

v.

**DEPARTMENT OF TRANSPORTATION, FAA, Respondent.**

Appeal No. 85-931.

United States Court of Appeals, Federal Circuit.

July 12, 1985.

Michael D. Quayle, Green, Merrigan, Johnson & Quayle, P.A., of Minneapolis, Minn., submitted for petitioner.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Sandra P. Spooner, Asst. Director, Commercial Litigation Branch, Dept. of Justice, of Washington, D.C., submitted for respondent.

Diane R. Liff, Office of the General Counsel, Dept. of Transp., of Washington, D.C., of counsel.

Before FRIEDMAN, Circuit Judge, MILLER, Senior Circuit Judge,* and NIES, Circuit Judge.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) affirming the removal of the petitioner from his position as an air traffic controller for participating in the illegal nationwide air traffic controllers' strike of 1981, 16 M.S. P.R. 592. We affirm and, because the appeal is frivolous, we assess costs and attorney's fees of $500 in favor of the government against the petitioner and his attorney.

* The Honorable Jack R. Miller assumed senior status, effective June 6, 1985.

## I.

The basic facts relating to the air traffic controllers' strike have been set forth in our opinion in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477, *cert. denied,* — U.S. —, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984), and need not be repeated here.

The strike began on August 3, 1981. The petitioner was on annual leave from July 26 through August 8. The chief of the control tower made several unsuccessful attempts to cancel the petitioner's leave, leaving word of such cancellation with his brother, mother, and wife. The chief observed the petitioner on the picket line on August 6 and 7. When the petitioner did not report for work on August 9, he was charged with and removed for striking on that date.

The petitioner presented the following explanation for his failure to report for work on August 9: The petitioner was vacationing in a remote area from July 31 to August 6. Upon returning from vacation, he was informed of two of the chief's attempts to inform him that his leave had been cancelled. After receiving this information, on the evening of August 6, the petitioner called his union (PATCO) representative, who informed him that all the controllers had been fired. The next day the chief called the petitioner's wife and left a message for the petitioner to report for work. The petitioner did not heed that instruction because the union had told him that he had been fired.

On the petitioner's appeal the Board upheld the removal. The presiding official held that the agency had presented a prima facie case that the petitioner had participated in the strike, *see Schapansky,* and that the petitioner had not rebutted the case. The presiding official described as "incredible" the petitioner's asserted justification for not reporting for work on August 9:

> The [petitioner] further emphasized that it was his practice to discuss employment problems with his PATCO representative rather than the tower chief.... The [pe-titioner's] reliance on this practice was unreasonable in the circumstances of this case because the PATCO representative had an obvious interest in keeping employees from returning to work and because it was the tower chief, and not the [petitioner's] PATCO representative who had authority over the [petitioner] in employment matters. I fail to understand, especially considering the two telephone calls from the tower chief, how Mr. Kump could have believed any statement that he had already been fired. It is not unrealistic to expect that a federal employee would know that his removal could not be effected summarily and without official notice and an opportunity to be heard; and if Mr. Kump were uncertain about his status he could call the agency rather than spend his time picketing with PATCO employees.

## II

■ A. The petitioner first argues that the agency committed harmful procedural error by allowing only 5 days within which to submit his oral response and by notifying him of the oral reply schedule only 2 days before the reply was to take place. As the presiding official correctly pointed out, however, the petitioner's representative from PATCO had agreed with the tower chief to the shortened reply schedule. The record also indicates that the petitioner was aware of the schedule for the oral reply in sufficient time to make one. In any event, the petitioner has failed to show that the shorter reply time prejudiced him, as he was required to do to establish that any error was harmful. *Schapansky,* 735 F.2d at 486.

■ The petitioner also argues that the agency improperly cancelled all oral replies and refused to hear them. What the record shows is that the deciding official refused to permit the PATCO representative to have his own representative present at the oral replies. The collective bargaining agreement did not provide for such additional representation. The PATCO representative could have made an oral re-

ply for the petitioner if he had not insisted on this improper additional representation.

 B. The petitioner next contends that the agency had not effectively cancelled his leave and that therefore he was justified in not reporting for work. The short and complete answer is that his offense was not reporting for work—and therefore participating in the strike—on August 9, 1981, the date after his annual leave had expired. As the presiding official correctly pointed out, his asserted justification for his refusal to report to work—that he believed he had already been fired—was "incredible."

 C. Finally, the petitioner asserts that he was treated differently from another controller, Mr. Polachek, who also was on annual leave when the strike began, but was permitted to return to work. Unlike the petitioner, however, Mr. Polachek responded to the agency's efforts to get in touch with him, was told to report to the nearest air traffic controller facility, which he did, and was then told to and did report for his deadline shift. The petitioner's failure either to make any effort to get in touch with his facility or to report for work on August 9 presented a wholly different case from that of Mr. Polachek.

## III

 On several occasions we have pointed out that costs and attorney's fees will be assessed against parties and their attorneys who press frivolous appeals. *E.g., Griessenauer v. Department of Energy,* 754 F.2d 361 (1985); *Moir v. Department of the Treasury,* 754 F.2d 341 (1985); *United States v. Atkinson,* 748 F.2d 659 (1984); *Asberry v. United States Postal Service,* 692 F.2d 1378 (1982). The appeal in this case either argued points that we had recently rejected or made arguments that were wholly devoid of merit. In the circumstances, the appeal is frivolous.

Accordingly, costs and attorney's fees of $500 are assessed in favor of the government jointly and severally against the petitioner, Mark R. Kump, and his attorney, Michael D. Quayle.

AFFIRMED.