David A. FITZGERALD, et al., Petitioners,

v.

DEPARTMENT OF TRANSPORTATION, FEDERAL AVIATION ADMINISTRATION, Respondent.

Appeal No. 85–1833.

United States Court of Appeals, Federal Circuit.

Aug. 8, 1986.

---

Richard J. Leighton, Buchanan Ingersoll, Professional Corp., Washington, D.C., argued for petitioners. With him on the brief, were Risa D. Sandler, Margaret S. Dailey and Glenn P. Sugameli.

Sandra P. Spooner, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for respondent. With her on the brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Stephen J. McHale.

Before RICH and DAVIS, Circuit Judges, and COWEN, Senior Circuit Judge.

DAVIS, Circuit Judge.

This appeal is from a reconsideration decision of the full Merit Systems Protection Board (MSPB or Board),[1] overturning an earlier full Board Opinion in this case, and ultimately sustaining the removal of the four petitioners by the Department of Transportation, Federal Aviation Administration (FAA), from their positions as air traffic controllers, for participating in the illegal nationwide Professional Association of Air Traffic Controllers (PATCO) strike in 1981 and being absent without leave during that period. We reverse because petitioners were neither strikers nor absent without leave for the duration of the strike; rather, they were on authorized leave as members of PATCO's national negotiating team in Washington, D.C.

### I.

The basic facts of the PATCO strike are set forth in *Schapansky v. Department of Transportation, FAA,* 735 F.2d 477 (Fed. Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). Each petitioner in this appeal was a regional representative of PATCO's national negotiating team.[2] PATCO policy required that a majority of the regional representatives approve a proposed collective bargaining agreement before it could be submitted to the full PATCO membership for ratification.

The record establishes, the earlier full Board decision found, and the Board's reconsideration decision did not challenge,

---

1. *Fitzgerald v. Department of Transportation,* 22 M.S.P.R. 343 (1984).

2. Carl Vaughn was the eastern regional representative, Max Winter the central regional representative, William Sedgwick the southern regional representative, and David Fitzgerald the Pacific regional representative.

that (1) the Secretary of Transportation requested the presence of the PATCO negotiating team in Washington, D.C. on August 1, 1981—the day negotiations reconvened; (2) each petitioner received a telephone call from Dennis Reardon, the chief spokesman for the negotiating team, and was directed to arrive in Washington, D.C. on August 2, 1981; (3) all had either been placed on leave for August 2, 1981, or not charged with AWOL on that date; (4) all either requested leave or relied on past practice in which PATCO at the national level would request leave through the FAA's national labor relations office; (5) petitioners always had received "time-off" without question whenever their attendance was requested at prior negotiation sessions; (6) although the FAA announced that on August 3, 1981, no further negotiations would be conducted (as long as the illegal strike continued), petitioners remained in Washington, D.C. and actively pursued an end to the strike through discussions with FAA, other executive and Congressional representatives; and (7) PATCO in this instance did not follow its past practice of requesting official leave for the negotiating team (but the petitioners apparently did not know that PATCO did not do so).

The FAA charged and found each petitioner guilty of strike participation and absence without leave.[3] The controllers appealed their removals to the Board. The presiding officials ruled that the controllers had not followed the proper procedures to obtain official leave and that their absences were unauthorized. On appeal, the full Board, in a decision dated November 10, 1983, reversed the initial decisions sustaining the removals. The Board first noted that "the past practice of the agency was to grant leave to [petitioners] in accord with 5 U.S.C. § 7131(a), and that these [petitioners] were not required to conform to any specified procedure to obtain such leave." The Board next determined whether these individual controllers were in fact "representing PATCO in the negotiation of a collective bargaining agreement." In this respect, the Board stated that

other than [one] affidavit, the agency presented no evidence in support of its contention that appellants were not authorized members of the negotiating team in August 1981. Nor did the agency rebut the appellants' hearsay evidence that FAA officials had required the team's presence in Washington because past arrangements were made by others, appellants had no reason to believe that leave was not authorized or that arrangements had not been made as they had been in the past. Thus, the weight of the evidence supports a finding that appellants were authorized representatives of PATCO on the dates charged.

The Board concluded, in that decision, that petitioners were engaged in "the representation of a collective bargaining agreement, and that [they] successfully rebutted the *prima facie* case presented by the agency."

Thereafter that first decision was reconsidered *sua sponte* by the full Board after the Office of Personnel Management had belatedly sought rehearing. In its August 1, 1984 reconsideration decision,[4] the full Board sustained the removals. It held that

---

**3.** The FAA charges covered strike participation and absence during various days between August 3, 1981 and August 11, 1981.

**4.** In connection with its determination to reconsider the case, the Board requested that the parties submit briefs on the following issues:
1. In light of *Bureau Of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983), can these appellants be considered employees who 'otherwise would be in a duty status' in accordance with 5 U.S.C. § 7131(a) during the periods in question, when they

failed to return to work upon commencement of the strike?
2. In light of the FLRA General Counsel's determination ... that the agency had not committed an unfair labor practice because its duty to bargain with the PATCO union was suspended after commencement of the strike, did the Board err as a matter of law in concluding that appellants should have been carried in 'official leave' status as members of the union negotiating team?
These additional briefs were filed, but there was no new hearing.

the agency successfully established a *prima facie* case of striking and that, because petitioners had not shown that they otherwise would have been in a duty status (and not on strike), they were not entitled to leave for official time.

## II.

The core issue [5] is whether petitioners fall within the grant of official time found in the relevant statute (5 U.S.C. § 7131). They assert that, on the dates charged, they were in Washington, D.C. negotiating a collective bargaining agreement as members of PATCO's national negotiating team and were therefore entitled to official leave pursuant to 5 U.S.C. § 7131(a),[6] and the terms of the then existing collective bargaining agreement.[7]

■ A *prima facie* case of striking is established when the agency shows that an employee was absent *without authorization* during a strike of general knowledge. *Schapansky v. Department of Transportation, FAA*, 735 F.2d 477, 482 (Fed.Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 432, 83 L.Ed.2d 358 (1984). We hold, however, that these petitioners were on authorized leave for the dates charged, pursuant to 5 U.S.C. § 7131(a) and Article 8, § 1 of the then collective bargaining agreement.

The statute, § 7131(a), declares:

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter *shall* be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee otherwise would be in a duty status. The number of employees for whom official time is authorized un-

der this subsection shall not exceed the number of individuals designated as representing the agency for such purposes. (Emphasis added.) This legislation expressly mandates that an employee shall be granted official time (during the hours that the employee would otherwise be entitled to salary) if engaged in the negotiation of a collective bargaining agreement on behalf of a union that is certified as an exclusive representative. As the Board held in its first final order, "[t]he mandatory language of the statute compels the authorization of administrative leave; thus, the agency is devoid of discretion in the granting of such leave to employees who meet the criteria of the statute."

The history of § 7131 supports this view. Before the enactment of the 1978 Civil Service Reform Act, grants of official time were governed by a series of executive orders. Some permitted bargaining on "official time" at the agencies' discretion (Exec.Order No. 10988); others placed a ceiling on such payments (Exec.Order No. 11616); and some totally prohibited bargaining on official time even at the agencies' discretion (Exec.Order No. 11491). The use of the mandatory language contained in the Civil Service Reform Act's grant of official time "must be viewed against this background of conflicting and inconsistent practices." *United States Department of Agriculture v. FLRA*, 691 F.2d 1242, 1251 (8th Cir.1982) (Heaney, *J.*, dissenting), *cert. denied*, 464 U.S. 1007, 104 S.Ct. 523, 78 L.Ed.2d 707 (1983).

■ Moreover, the enacted language of § 7131 was derived from the House version of the Civil Service Reform Act. *See* H.R. Rep. No. 95–1403 (1978). In adopting the

---

**5.** We need not consider petitioners' preliminary argument that the full Board was without authority to reconsider its first decision.

**6.** Section 7131(a) of Title 5, United States Code, provides:

Official time

(a) Any employee representing an exclusive representative in the negotiation of a collective bargaining agreement under this chapter shall be authorized official time for such purposes, including attendance at impasse proceeding, during the time the employee other-

wise would be in a duty status. The number of employees for whom official time is authorized under this subsection shall not exceed the number of individuals designated as representing the agency for such purposes.

**7.** Article 8, section 1 of the FAA/PATCO collective bargaining agreement provided that "Union officials who are elected or selected to serve in an official capacity as a representative of the Union shall be entitled to a leave of absence for their terms of office or appointment."

House wording, Congress rejected the Senate version, which provided official time only to the extent agreed upon by the negotiating parties. *See* S.Rep. No. 95–969, p. 112 (1978), U.S.Code Cong. & Admin. News 1978, p. 2723. As the Supreme Court recognized in *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 102, 104 S.Ct. 439, 449–50, 78 L.Ed.2d 195 (1983) (*BATF*), "Congress ... adopted the section in its present form, concluding, in the words of one Congressman, that union negotiators 'should be allowed official time to carry out their statutory representational activities just as management uses official time to carry out its responsibilities'." The Court also interpreted the statutory phrase "during the time the employee otherwise would be in a duty status" to mean that "employee negotiators [are] to be paid as if they were at work, whenever they bargain during hours they would otherwise be on duty." *Id.* at 91, 104 S.Ct. at 441.[8] If the negotiating session took place during the time period that the employee was otherwise scheduled to work, the employee would be entitled to receive compensation for that period. Conversely, if these representational duties occurred (for instance) on a weekend when the employee was not scheduled to work as a controller, there would be no pay. Thus, if the employee was in fact engaged in proper representational activities, the only question evoked by the statutory phrase "during the time the employee would be in a duty status" is whether that employee would otherwise have been scheduled, in ordinary course, to be paid by his FAA facility.[9]

The agency's past practice (up to August 1981) on the grant of official time had been consistent. Regional representatives of PATCO's national regulatory team were never denied leave, and they were never required to follow set guidelines in obtaining official time. These four petitioners followed that general practice, as we have stated, and the full Board so held in its first decision. On reconsideration, the Board seemed to cast doubt on its prior holding that petitioners had received authorization to proceed to Washington, but we think that conclusion is overwhelmingly required by the evidence, including the past practice, the affidavit (from the PATCO president) that the Secretary of Transportation had insisted that the PATCO negotiating team come to Washington immediately (August 1, 1981), and the testimony that the Secretary's statement had been repeated by union officials to petitioners. That authorization to come to Washington was never cancelled.[10]

The remaining problem, as stated in the Board's first final decision, "is whether [petitioners] were, on the dates charged, representing PATCO in the negotiation of a collective bargaining agreement." First, did petitioner's represent PATCO in Washington? It is undisputed that they were official members of PATCO's national negotiating team at least through July 1981. On petitioners' status in August 1981, the affidavit of PATCO's Reardon stated that petitioners were part of the negotiating team during that month. Robert E. Poli, then president of PATCO, declared by affi-

8. *See BATF,* 464 U.S. at 99, 104 S.Ct. at 445, in which the Court noted that "[a]ccording to the House Committee that reported the bill containing § 7131, Congress used the term 'official time' to mean 'paid time'."

9. The Board's reconsideration decision erred in holding that that statutory phrase called upon the Board to decide first whether the petitioners would have been on strike if they were not engaged in statutorily representational activities. That turns the statutory inquiry on its head. The only real question is whether the petitioners were engaged in statutory collective bargaining. If they were, they were entitled to official time except for days that they would not

ordinarily have been scheduled to work as controllers. It is irrelevant whether they would have participated in the strike if they had not been engaged in statutory functions.

10. The Board's reconsideration decision stated that the Secretary's insistence that petitioners come to Washington did not cover post-strike periods, but there is nothing at all in the record to support that inference—so long as petitioners were carrying on collective bargaining activities. We discuss, *infra,* the nature and characterization of petitioners' activities while in Washington.

davit that the Secretary of Transportation "insisted that the PATCO negotiating team be present in Washington, D.C. immediately [August 1] to ratify any tentative settlement that may be reached." The agency did not rebut petitioners' contention that the Secretary of Transportation requested their presence in Washington, D.C. And, although the affidavit of Edward V. Curran (Director, Office of Labor Relations, FAA) said that negotiating sessions with the full PATCO team were not held during August 1981, he also declared that negotiations resumed July 31, 1981 between national representatives of PATCO and the FAA. Based on the record and the fact that the presence and participation of the national team was required before any tentative agreement could be presented to the rank and file, the Board's apparent decision (on reconsideration) that petitioners were not authorized representatives of PATCO, on the August dates charged in the removal proceedings, is not supported by substantial evidence.

 The second and crucial issue is the nature of petitioners' role in Washington, D.C. during August 1981. The controllers admit that they were not involved in formal (across the table) negotiations with the FAA.[11] However, PATCO remained the collective bargaining representative until October 1981. If the strike had been settled in August, PATCO would have to be dealt with.[12] Collective bargaining is broadly defined by 5 U.S.C. § 7103(a)(12) as:

the performance of the mutual obligations of the representative of the agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain in a good faith effort to reach agreement with respect to

the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached....

As regional representatives, petitioners had to ratify any proposed collective bargaining agreement before it could be submitted to the Union rank and file. If these controllers had gone back to their home bases, the Union would have been unable to settle the strike because the strike ratification mechanism would not have been available. (Petitioners had always been awarded official time for past negotiations during which they were present solely to ratify a tentative agreement.) Moreover, the time spent dealing informally with FAA, the executive branch, and Congress, cannot be considered mere "stand-by" time.[13] Although the agency had announced that it would not negotiate during the strike, petitioners met with interested representatives of both the executive branch and Congress in a futile attempt to end the strike. It cannot be discounted that PATCO was still the authorized collective bargaining representative of the controllers. In these circumstances, it was clearly not the intent of Congress that the negotiators for the representative Union must go home and discontinue talks with the FAA after the strike was called; and the broad wording of § 7103(a)(12) certainly permits the construction that petitioners' activities in August 1981 were part of ongoing collective bargaining for which they were entitled to "official time" and authorized leave.

REVERSED.

---

**11.** When the strike came, FAA announced that it would not formally deal with PATCO or any strikers. The General Counsel of the Federal Labor Relations Authority later refused to hold that this was an unfair labor practice on the part of FAA.

**12.** The General Counsel's determination (fn. 11, *supra*) did not decertify PATCO.

**13.** In the reconsideration decision, the Board stated:

No matter how expansively the concept of negotiation may be interpreted, we do not believe that it should be intended to cover the stand-by time at issue here during which after the illegal strike began, the [petitioners] were waiting to see if the agency would be compelled or coerced into once again dealing with the Union.