NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3051

DAVID GUAJARDO,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Ronald H. Tonkin, Law Offices of Ronald H. Tonkin, of Houston, Texas, for petitioner.

Jane W. Vanneman, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Michael F. Hertz, Deputy Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2009-3051

DAVID GUAJARDO

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY

Respondent.

Petition for review of the Merit Systems Protection Board in DA-0752-08-0162-I-1.

—————————————

DECIDED: July 9, 2009

—————————————

Before LOURIE, RADER, and MOORE, <u>Circuit Judges</u>.

PER CURIAM.

I.

The Merit Systems Protection Board affirmed the decision of the Department of Homeland Security to remove Mr. David Guajardo from his position as a Supervisory Border Patrol Agent. <u>Guajardo v. Dep't of Homeland Sec.</u>, No. DA-0752-08-0162-I-1 (M.S.P.B. October 15, 2008). Because substantial evidence supports the Board's decision, this court <u>affirms</u>.

II.

Petitioner David Guajardo was employed as a Supervisory Border Patrol Agent with the United States Customs and Border Protection in El Paso, Texas. He had over

twenty years of work experience. The events leading up to Mr. Guajardo's termination occurred on July 4, 2005.

At 8:30 am, the El Paso Police Department called the patrol office requesting assistance with a traffic stop involving suspected illegal aliens near the intersection of Highway 10 and Americas Avenue, an intersection commonly referred to as the "Joe Battle" stop. Board Patrol Agent ("BPA") Andres Aranda and the petitioner both reported to the scene in separate vehicles. Upon arrival, Mr. Guajardo, the senior BPA, directed Officer Aranda to investigate the scene while Mr. Guajardo served as a lookout. Mr. Guajardo testified that while observing traffic he noticed a suspicious pick-up truck passing the intersection. Mr. Guajardo then left the Joe Battle stop to pursue the suspicious vehicle. He did not inform any of the other officers on the scene of his reasons for leaving.

According to Officer Aranda, he attempted to contact Mr. Guajardo after securing the individuals from the Joe Battle Stop in his vehicle. He was not successful in making contact for some time. After some time, Mr. Guajardo finally responded to Officer Aranda and informed him that he was at the Lee Trevino exit off of Highway 10. The intersection is commonly known as the "Lee Trevino" stop. When Officer Aranda arrived at the intersection, he saw Mr. Guajardo's vehicle pulled over behind a pick-up truck. Mr. Guajardo then informed Officer Aranda that he had arrested one of the passengers in the truck, Luis Armando Pinon Olivas. At the time, Mr. Pinon was sitting in the pick-up truck along with two other males and three females. Mr. Pinon's personal bag was in the bed of the truck. After searching the bag, Officer Aranda put Mr. Pinon in the back of his vehicle along with the other individuals arrested at the Joe Battle stop.

While Officer Aranda secured Mr. Pinon in the back of his vehicle and before Officer Aranda could question the other individuals in the truck, the truck drove away. Officer Aranda asked Mr. Guajardo to explain his reasons for releasing the vehicle. Mr. Guajardo replied, "Don't worry about it." Officer Aranda then asked Mr. Guajardo what he wanted to do with Mr. Pinon. In response, Mr. Guajardo stated, "PWA – afoot on I-10 West," which means "present without admission – on foot." This explanation indicates that the suspect was arrested while on foot. Officer Aranda testified that he believed this instruction to be untruthful because Mr. Pinon had been arrested in the vehicle. He further testified that Mr. Guajardo's instruction was suspicious because he was not allowed to obtain additional information from the passengers in the car or to record the car's license plate or registration number.

Mr. Guajardo testified that after he left the Joe Battle stop, he pursued the pick-up truck for a few blocks until he lost visual contact. At that point, he observed an individual, Mr. Pinon, in a parking lot across the street who was carrying a gym bag with dried mud stains on it. The mud stains aroused Mr. Guajardo's suspicion because illegal aliens, according to Mr. Guajardo, typically used the Rio Grande River to enter the United States. Mr. Guajardo then approached Mr. Pinon and questioned him. Mr. Pinon gave incomplete answers and would only say that he was from Mexico. Mr. Guajardo then frisked, handcuffed, and placed Mr. Pinon in the front passenger seat of his car so he could resume his pursuit of the pick-up truck. Mr. Guajardo did not search Mr. Pinon's bag. Mr. Guajardo testified that he holsters his weapon on his right hip facing Mr. Pinon's seat in the vehicle. Soon after resuming the search, Mr. Guajardo located the once-lost pick-up truck and pulled it over. He approached the driver of the

truck who promptly provided his driver's license, car registration, and insurance card. According to Mr. Guajardo, he quickly determined that the driver and passengers were United States citizens. At that point, Mr. Guajardo "realized" that Pinon was "not completely secured" and decided that "it would be best if [he were] removed from the unsecured unit" and brought closer. Mr. Guajardo contends that he took Mr. Pinon out of the patrol car and brought him to the side of the pick-up truck. Based on the eye contact between the passengers of the pick-up truck and Mr. Pinon, Mr. Guajardo surmised that they knew one another. After a short time, Mr. Guajardo became concerned "for the safety of the subject and the people in the truck as well as [his] own safety" due to the public attention created by the stop. Accordingly, Mr. Guajardo placed Mr. Pinon, still in handcuffs, in the back of the truck next to the passengers. After resuming questioning of the driver of the truck, Mr. Guajardo determined that he would not be able to create a case against any of the truck's occupants. He called Officer Aranda to arrange for transportation. While waiting for Officer Aranda to arrive, Mr. Pinon began to complain about the tightness of the handcuffs. As Mr. Guajardo was loosening the handcuffs, Officer Aranda arrived. By the time Officer Aranda approached the truck, Mr. Guajardo had removed the handcuffs and put them away. Mr. Guajardo then told Officer Aranda that he had arrested Mr. Pinon on foot.

When Mr. Guajardo, Officer Aranda, and Mr. Pinon arrived back at the station Officer Daniel Noriega, another BPA, was assigned to process Mr. Pinon. Officer Noriega testified that he went through normal processing procedures with Mr. Pinon, including entering biographical data, getting fingerprints, and running a background check. After speaking with Mr. Guajardo to get a better idea of what happened, Officer

Noriega was apprehensive because it did not appear to him that there was probable cause for the arrest. He therefore called Mr. Guajardo to type out the arrest information. Officer Noriega testified that Mr. Guajardo supplied the following narrative:

> On July 04, 2005, at approximately 0845 hours, while performing assigned Linewatch duties, Supervisory Border Patrol Agent David Guajardo encountered a male subject walking north at the intersection of Interstate 10 and George Dieter, El Paso, Texas. SBPA Guajardo noticed that the subject, later identified as Pinon-Olivas, Luis Armando appeared to be disoriented and lost, and was carrying a muddy duffle bag. SBPA Guajardo approached and talked to the subject in the English language. It became apparent to Agent Guajardo that the subject did not understand English and thereby questioned subject as to his citizenship. PINON-Olivas stated that he was a citizen of Mexico illegally in the United States and not in possession any [sic] Immigration Documents to enter, be or remain in the United States.

Notably absent from Mr. Guajardo's narrative was any mention of the pick-up truck or its passengers. Mr. Guajardo confirmed that he entered some arrest data and that he omitted any recount of the vehicle stop, the handcuffing of Mr. Pinon, and the transport of Mr. Pinon along with his bag in the passenger seat of the patrol vehicle. He further testified that he instructed Officer Aranda to record the intersection of George Dieter and I-10 as the location where Mr. Pinon was apprehended.

A week later, Officer Aranda reported his concerns regarding the events to his union steward. Officer Aranda testified that it took him a week to get the courage to do the right thing. Christopher Estrada, a representative from the Office of the Inspector General, was assigned to investigate the allegations. He testified that he interviewed Mr. Pinon who reported that he was arrested when his vehicle was pulled over — not while he was on foot. Estrada indicated that Mr. Pinon was adamant about this fact during the interview.

Mr. Guajardo was charged with three violations: (1) instructing a subordinate employee to enter inaccurate information into an official report; (2) entering inaccurate information into an official report; and (3) failure to document a vehicle stop. Chief Patrol Agent Victor Manjarrez was designated as the deciding official in Mr. Guajardo's disciplinary investigation. Chief Manjarrez testified that he wanted to make sure the right decision was made. He further testified that Mr. Guajardo's account of the events was "weird" and "just not believable." Chief Manjarrez further testified that despite the clear violations of patrol procedures, Mr. Guajardo still maintained that he had done nothing wrong. In addition, for a first-line supervisor with over twenty years of experience the acts were particularly egregious in Chief Manjarrez's eyes. Chief Manjarrez testified that ultimately Mr. Guajardo's story was so unbelievable that the penalty could not be mitigated and termination was appropriate.

Mr. Guajardo appealed the decision to terminate to the Board. The administrative judge affirmed all the charges and the penalty of termination, finding:

> After consideration of the testimony concerning Pinon's arrest, I conclude that the appellant did not arrest Pinon while he was walking on or along I-10. I find that appellant's testimony concerning his actions after he left the Joe Battle scene is not credible. . . . The appellant stated that he did not search Pinon's gym bag, yet he put the bag on the floor of the truck in front of the passenger seat where Pinon had ready access to it. The appellant also related that he carries his service weapon on his right side. Thus, the appellant's weapon was also readily available to Pinon if he had wanted to make an attempt to take it. . . . The appellant's testimony about handcuffing Pinon; moving him to the truck; and then removing the handcuffs prior to Aranda's arrival is not believable. It does not appear prudent or logical for the appellant to have been fumbling around with the handcuffs while he was still trying to observe the truck occupants.

<u>Guajardo v. Dep't of Homeland Sec.</u>, No. DA-0752-08-0162-I-1 (M.S.P.B. May 21, 2008).  The Board denied Mr. Guajardo's petition for review.  Mr. Guajardo timely appealed under 28 U.S.C. § 1295(a)(9).

III.

The scope of our review from a Board appeal is limited.  This court must affirm the Board's decision unless it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence."  5 U.S.C. § 7703(c); <u>Chase-Baker v. Dep't of Justice</u>, 198 F.3d 843, 845 (Fed. Cir. 1999).  "The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor."  <u>Griessenauer v. Dep't of Energy</u>, 654 F.2d 361, 364 (Fed. Cir. 1985).

To remove for misconduct, the agency must establish by a preponderance of the evidence that the employee actually committed the misconduct, that disciplining the employee promotes the efficiency of the service, and that the penalty was appropriate, given the misconduct.  <u>Henry v. Dep't of the Navy</u>, 902 F.2d 949, 953-54 (Fed. Cir. 1990).  This court notes that the appropriate penalty for employee misconduct is left primarily to the discretion of the employing agency and will only be reversed for an abuse of discretion.  <u>Schapansky v. Dep't of Transp.</u>, 735 F.2d 477, 484 (Fed. Cir. 1984).

In this case, the record shows that the agency has met its burden to show that Mr. Guajardo's termination was appropriate and promoted the efficiency of the service.  Mr. Guajardo's proffered story of the events of the date in question is implausible.

Officer Aranda came to the Lee Trevino stop to find Mr. Pinon sitting in the pick-up truck without any handcuffs on. Officer Aranda testified that Mr. Pinon's personal bag was in the bed of the truck. Before Officer Aranda could get any information on the truck or its passengers, Mr. Guajardo dismissed the vehicle without recording any information himself. As an experienced patrol officer, Mr. Guajardo knew that such information should have been recorded.

In addition, Mr. Guajardo's explanation of moving Mr. Pinon from the passenger seat of his patrol car to the pick up truck is dubious at best. Mr. Guajardo admitted that he never searched Mr. Pinon's bag and that he placed the bag in front of Mr. Pinon in the passenger seat of his patrol vehicle. Mr. Guajardo also confirmed that he holsters his gun on his right hip next to where Mr. Pinon was sitting. At the hearing in front of the administrative judge, Mr. Guajardo acknowledged the potential danger that an officer faces when instigating a stop or arrest of an unknown vehicle or person. Yet in the face of this recognized danger, Mr. Guajardo left Mr. Pinon — an unknown arrestee — unwatched in the passenger seat of his patrol car with direct access to his unsearched gym bag. Mr. Guajardo then moved Mr. Pinon into the pick-up truck. At that point, Mr. Guajardo had not even confirmed whether the passengers knew Mr. Pinon. Nor did he ever confirm any relationship because he dismissed the vehicle before Officer Aranda could record any information.

Absent from Mr. Guajardo's narrative of the events in the police report was any mention of the pick-up truck. Mr. Guajardo's actions were in direct violation of the agency's procedural guidelines which state that: "Documenting every stop as soon as it

2009-3051                                    8

is concluded, regardless of whether an arrest was made, is imperative and vitally important." A "vehicle stop" is defined broadly in the policy handbook:

> Anytime an agent orders the operator of a motor vehicle to stop and the operator does so, it constitutes a vehicle stop, regardless of whether done with emergency lights, with hand or verbal commands, from inside a patrol vehicle, on a horse, on a bicycle, in an all-terrain vehicle, or on foot.

Mr. Guajardo openly admits that he omitted the stop of the pick-up truck in its entirety from his report. He also acknowledges that he instructed Officer Aranda to report that Mr. Pinon was arrested on foot at the intersection of George Dieter and I-10.

Even after the events of the day came to a close, Mr. Guajardo still would not concede to Chief Manjarrez — the designated deciding official — that he had done anything wrong. Mr. Guajardo's briefing to this court takes the same untenable position. Not surprisingly, Chief Manjarrez found Mr. Guajardo's story to be difficult to understand and "completely inconsistent with facts and [Mr. Guajardo's] training and experience."

On this record, substantial evidence supports the conclusion that Mr. Guajardo stopped and arrested Mr. Pinon in the truck rather than on foot. This conclusion supports each of the agency's charges. As to the first charge, instructing a subordinate to enter inaccurate information into an official report, Mr. Guajardo admitted that he directed Officers Aranda and Noriega to record his version of the story in the police report. The second charge, entering inaccurate information into an official report, is also supported because Mr. Guajardo typed in some information himself. The last charge cannot reasonably be disputed as Mr. Guajardo admits to having stopped the pick-up truck and omitting the stop from his report. Based on the substance of the charges, the agency did not abuse its discretion in deciding to remove Mr. Guajardo from his position.

We have considered Mr. Guajardo's remaining arguments and find them unpersuasive.  Accordingly, we affirm the Board's decision.

COSTS

No costs.