Stephen H. JONES

v.

The UNITED STATES.

No. 85–78.

United States Court of Claims.

March 19, 1980.

Bruce Baldwin, Dallas, Tex., attorney of record, for plaintiff.

Russell W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen., Alice Daniel, Washington, D. C., for defendant; Arthur B. Sackler, Merit Systems Protection Bd., and Lee J. Ross, Jr., Dept. of Agriculture, of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and NICHOLS, Judge.

## ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

FRIEDMAN, Chief Judge:

This case is before the court on cross-motions for summary judgment (the plaintiff's motion was made at oral argument). Plaintiff sues for back pay and reinstatement following his dismissal as a meat inspector for the Department of Agriculture. The dismissal was based on plaintiff's acceptance of a gratuity from the owner of the plant to which he was assigned to inspect all beef processed. Plaintiff claims that the violation found is not supported by substantial evidence, that the penalty of dismissal was so disproportionate to the violation that it constituted an abuse of discretion, and that the penalty was discriminatory. We

reject those contentions, uphold the administrative action, and dismiss the suit.

## I.

Plaintiff worked as a food inspector for the Animal and Plant Health Inspection Service of the United States Department of Agriculture. He was assigned to monitor the slaughter of cattle at Bub Davis Packing, Inc., in Luling, Texas.

On April 29, 1975, Jones received a Notice of Proposed Removal from his job. The notice contained three charges: (1) neglect of duty; (2) acceptance of a favor from one with whom he had official relations; and (3) solicitation and acceptance of a loan from one with whom he had official relations. The first charge contained four specifications, detailing four occasions on which plaintiff allegedly allowed dead or dying cattle into the plant for processing, contrary to Department regulations. The second charge stemmed from plaintiff's alleged acceptance of a bottle of whiskey from Frank "Bub" Davis, the owner of the packing house. The third charge was that plaintiff had requested and borrowed $20 from Davis.

The Acting Director of the Personnel Division of the Inspection Service ruled that the first two charges were supported by substantial evidence, but that the third allegation could not be sustained, and directed that plaintiff be removed from his position.

Following an administrative appeal in which there was a hearing before the Federal Employee Appeals Authority ("Appeals Authority"), the Appeals Authority held that the evidence did not support the first charge (permitting dead or dying animals to be processed), but did support the second charge (acceptance of a bottle of whiskey). The Appeals Authority reversed the removal of plaintiff, however, because "the sustained Reason II was not sufficient, standing alone to warrant" that action.

The Department of Agriculture appealed to the Civil Service Commission Appeals Review Board only from the portion of the Appeals Authority's decision that reversed

the removal of plaintiff. The Board upheld the removal. It stated:

Because of the importance of the duties of an Inspector and the independence with which those functions are performed, it is the agency's policy, well known to all employees, that any action by the Inspector which creates even the appearance of a conflict of interest will result in a severe penalty. The public interest in proper performance by Food Inspectors is paramount, so that any action which will result in a real or apparent conflict must be eliminated. Under these circumstances, it is the fact of the gift or gratuity rather than its value which is considered the critical element in this case.

In consideration of these factors, the Board finds that overturning the agency's decision on the grounds that taking the gratuity in question was not a sufficiently serious act to warrant removal involves a misinterpretation and misapplication of Commission policy, because agencies must be accorded the widest discretion in dealing with violations of the trust necessary to the employer-employee relationship and with breaches of the public confidence. Appellee's conduct in accepting the gratuity goes to the heart of his credibility in the performance of his duties by calling the impartial exercise of his judgment into question. Under the circumstances we find nothing in the record which would lead us to conclude that the penalty of removal is so harsh as to be beyond the agency's discretion . . . .

## II.

Plaintiff contends that the finding that the whiskey he received from Davis was a gift and not a loan is not supported by substantial evidence. He relies on his own testimony that he intended only to borrow the whiskey, a written statement by Davis that he so understood the transaction, and the fact that ultimately (5 months later) plaintiff returned a bottle of whiskey to Davis.

■ Our review of administrative fact-finding is limited to determining whether substantial evidence supports the determination. *E. g., Boyce v. United States*, 211 Ct.Cl. 57, 543 F.2d 1290 (1976); *Power v. United States*, 209 Ct.Cl. 126, 531 F.2d 505 (1976). Because the trier of fact can observe the demeanor of the witnesses and their reaction when confronted with the documents and evidence in the case,

> ■t follows that this court should accept the administrative evaluation of credibility, unless the testimony accepted is inherently improbable or discredited by undisputed evidence or physical fact. Where two versions of the facts are equally probable, this court would normally be constrained to favor the version accepted by the [agency].

*Dittmore-Freimuth Corp. v. United States*, 182 Ct.Cl. 507, 540, 390 F.2d 664, 685 (1968).

■ The finding of the Appeals Authority that the transfer of the whiskey from Davis to the plaintiff was a gift rather than a loan is supported by substantial evidence. As the Appeals Authority stated,

> [i]n view of the lapse of time between appellant's receiving the whiskey and "repaying" it, and the fact that it was not "repaid" until after appellant retained an attorney in connection with his proposed removal based in part on his receiving the whiskey, we find that the evidence of record supports the reason and the reason must be sustained.

In reaching that conclusion, the Appeals Authority properly recognized the broad authority of the tribunal to draw inferences from the facts. Indeed, it is a commonplace that persons accused of improperly accepting gifts frequently attempt to justify their conduct by describing the transactions as loans.

### III.

■ A. The determination of the appropriate penalty for an employee's violation of the standards that govern the performance of his duties and his conduct in connection therewith is a matter committed primarily and largely to the discretion of the employer. On occasion we have rejected a penalty that was "so harsh that there is an 'inherent disproportion between the offense and punishment.'" *Power, supra,* 209 Ct.Cl. at 131, 531 F.2d at 507 (quoting *Grover v. United States*, 200 Ct.Cl. 337, 353 (1973)). That is the exceptional situation, however, and we cannot say that the Review Board erred in sustaining the removal of plaintiff from his employment for his acceptance of a bottle of whiskey from the firm whose slaughtering practices he was monitoring.

The regulations of the Department of Agriculture governing "Employee Responsibilities and Conduct," which the Department's Office of Personnel apparently distributes to every employee "for insertion in your employee handbook," has a section captioned "Gifts, entertainment, and favors." It states (7 C.F.R. § 0.735–12(a) (1979)):

> (a) Except as provided in paragraphs (b) and (e) of this section, an employee shall not solicit or accept, directly or indirectly, any gift, gratuity, favor, entertainment, loan, unusual discount, or any other thing of monetary value from a person who:
>
> .   .   .   .   .
>
> (2) Conducts operations or activities that are regulated by the Department; or
>
> (3) Has interests that may be substantially affected by the performance or nonperformance of his duty.

This broad and unqualified language covers the plaintiff's acceptance of the gift of a bottle of whiskey from Davis. Davis's packing company was an operation or activity "regulated by the Department," which could be "substantially affected by the performance or nonperformance of [plaintiff's] duty." Indeed, the difference between plaintiff's strict and vigorous or lax and lackadaisical enforcement of the standards governing Davis's packing plant could have a substantial financial impact upon that business.

■ There are two exceptions in the regulation to the ban on the acceptance of gifts that plaintiff contends cover his case. Subsection (b)(3) excepts "[a]cceptance of unsolicited advertising or promotional material, such as pens, pencils, note pads, calendars, and other things of nominal value." The bottle of whiskey, however, was not "advertising or promotional material." The other exemption, in subsection (b)(4), is for "[t]he exchange of usual social courtesies which are wholly free of any embarrassing or improper implications." For the reasons given below, plaintiff's acceptance of the whiskey was not wholly free of any embarrassing or improper implications, but instead was fraught with them.

Although the acceptance of a single bottle of whiskey in some circumstances might be a trivial violation, we cannot so characterize it here. The position of meat inspector that the plaintiff occupied was extremely sensitive. Plaintiff was the sole representative of the Department at the Bub Davis packing plant, and the responsibility for assuring that the meat produced there met the Department's standards rested solely on his shoulders. Any failure by him vigorously and effectively to enforce the Department's stringent standards designed to protect the public against contaminated meat could have a serious adverse impact on the public health. As the Review Board stated in upholding the plaintiff's removal: "Appellee's conduct in accepting the gratuity goes to the heart of his credibility in the performance of his duties by calling the impartial exercise of his judgment into question." The Review Board also correctly pointed out that "it is the agency's policy, well known to all employees, that any action by the Inspector which creates even the appearance of a conflict of interest will result in a severe penalty."

The importance the Department attaches to the prohibition on acceptance of gifts is shown by the fact that, in its "Guides for Supervisors" (1969 Revision), the Department specifies removal as the appropriate penalty for a first offense in the case of "[a]sking for or accepting a bribe, loan, free service, or other favor from . . . a person who has a personal or pecuniary interest in the manner in which the taking employee administers official regulations or performs his official duties" or "[a]cceptance of loans, gratuities, favors, etc. from persons, firms or corporations with whom the employee has official relations." In contrast, there are a number of other infractions for which the recommended penalty for a first offense is much less severe, such as a reprimand or a suspension from work, and removal is recommended only for second or third offenses, and even then sometimes only as the penalty for more serious violations.

Congress itself has recognized the seriousness of and the importance of preventing and deterring the acceptance of gifts by federal meat inspectors. In 21 U.S.C. § 622 (1976) Congress has made it a felony, punishable by a fine and imprisonment for at least 1 year and up to 3 years, for such person to accept from any person or firm engaged in commerce "any money, gift, or other thing of value." *See United States v. Murphy*, 480 F.2d 256 (1st Cir.), *cert. denied*, 414 U.S. 912, 94 S.Ct. 253, 38 L.Ed.2d 151 (1973); *United States v. Seuss*, 474 F.2d 385 (1st Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

The present case thus is quite different from cases in which we have found the penalty so disproportionate to the offense as to constitute an abuse of discretion. In most of those cases the offenses did not relate to the performance of the employee's duty but involved only a collateral matter. *E. g., Boyce, supra* (Internal Revenue Service employee failed to file timely personal income tax returns); *Power, supra* (Army ammunition inspector padded his travel expense vouchers); *Clark v. United States*, 162 Ct.Cl. 477 (1963) (Civil Aeronautics Administration employee used government car for minor personal errands). Even where the conduct did so relate, as in *Jacobowitz v. United States*, 191 Ct.Cl. 444, 424 F.2d 555 (1970) (Internal Revenue Service revenue officer delayed cashing taxpayers' checks), it was far less serious in its possible impact on the performance of the employee's duties than the plaintiff's action here.

The justifications for plaintiff's removal are even stronger than those in *Birnholtz v. United States*, 199 Ct.Cl. 532 (1972). Birnholtz was a lawyer for the Internal Revenue Service. He was found to have reported that he was auditing taxpayers' books when he was not actually doing so, not to have worked the required hours, and to have failed to follow his supervisor's instructions on work procedures. That conduct did not pose the potential for injuring the public health that plaintiff's action created. In sustaining Birnholtz's dismissal, we stated that

> within statutory and Presidential guidelines, and in view of agency missions, management has a right to lay down standards of conduct for employees and also to decide whether specific breaches of these standards are serious or petty. If we are able to see a reasonable nexus between a disciplinary action consequent on these determinations, and what the [agency] deems in good faith its interests to be, our function is at an end.

*Id.* at 538. *See also Heffron v. United States*, 186 Ct.Cl. 474, 405 F.2d 1307 (1969) (receipt of case or half case of liquor from government contractor, whose contract employee was administering, justified removal).

B. Plaintiff contends, however, that because the Department removed him on the basis of the findings of violations under both charges 1 and 2, it cannot fairly be assumed that he would have been removed solely for the receipt of the liquor involved in charge 2. The Department, however, appealed to the Review Board only from the Appeals Authority's reversal of the removal and not from the reversal of the violation found under count 1. By taking such action, the Department made clear that it considered removal the proper penalty for the plaintiff's acceptance of the liquor.

Moreover, the Department's letter to the Review Board taking the appeal, which an Assistant Secretary signed, stated that both the "Department's penalty guide and APHIS [Animal and Plant Health Inspection Service] practice clearly show that removal is the penalty established in policy for violations of the above cited law and regulations," that "[t]his policy should have been applied in regard to Mr. Jones' appeal," and that

> [i]f APHIS cannot remove inspectors for violations such as that sustained here, the decision will allow the type of activity that the Meat Inspection Act was structured to prohibit. Official relations with employees of regulated establishments must be free from any suggestion of improper conduct. The decision on Mr. Jones' appeal excuses such improper conduct, and as such, creates an unreviewed policy of precedential impact for any Federal regulatory body.

These statements show that the Department has concluded that plaintiff should be and would have been removed solely because of his acceptance of the liquor from the owner of the packing plant at which he worked.

### IV.

Plaintiff contends that his removal was discriminatory because the Department has imposed lesser penalties for offenses no more serious than his. He seeks a trial on that issue.

Plaintiff has not set forth any facts that show or even indicate a strong probability of discrimination. His generalized charges are so speculative and conjectural that they do not warrant a hearing or preclude summary judgment. Moreover, a penalty that is within the authority of the agency is "not rendered invalid in a particular case because it is more severe than sanctions imposed in other cases," since "mere unevenness in the application of the sanction does not render its application in a particular case 'unwarranted in law.'" *Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 187, 188, 93 S.Ct. 1455, 1459, 36 L.Ed.2d 142 (1973).

### CONCLUSION

Defendant's motion for summary judgment is granted, plaintiff's motion is denied, and the petition is dismissed.