**Christian FACER, Petitioner,**

v.

**DEPARTMENT OF the AIR
FORCE, Respondent.**

No. 87–3382.

United States Court of Appeals,
Federal Circuit.

Jan. 6, 1988.

Daniel Minahan, Minahan and Shapiro, P.C., Denver, Colo., submitted for petitioner.

Hillary A. Stern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., submitted for respondent. With her on the brief were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Robert A. Ruetershan, Asst. Director. Also on the brief was David M. Diver, Major, USAF, General Litigation Div., Office of the Judge Advocate General, Washington, D.C., of counsel.

Before BISSELL, Circuit Judge, NICHOLS, Senior Circuit Judge, and MAYER, Circuit Judge.

NICHOLS, Senior Circuit Judge.

In this case we confront a petition by Christian Facer, a former aircraft mechanic once employed at Hill Air Force Base, Utah. The Merit Systems Protection Board (MSPB) in 33 M.S.P.R. 243 (1987) upheld an agency decision removing Facer for smoking marijuana on the base, and

thereby modified a tentative decision by its administrative judge (AJ) which would have sustained the charges but mitigated the penalty to a 30–day suspension plus demotion, thus requiring reinstatement at a lower grade, with back pay. This tentative decision did not question the commission of the offense or nexus with the efficiency of the service, nor its seriousness in view of the critical nature of Facer's work and the possible fatal consequences of its being done by a person enjoying a marijuana "high." The AJ relied on the disparately lenient treatment he found to have been meted out to other offenders at the same base and notably to one Cahill who was caught with Facer and apparently sharing a "joint" with him. We remand for further clarification as to the effect, meaning, and intent of AFR 40–750, Attachment 3, for hearing of Cahill's testimony which was mistakenly excluded over the objections of Facer's counsel, if it can be obtained consistent with the fifth amendment, and possibly other matters.

### Background

The story of this case commences the evening of December 5, 1985, with a pair of Air Force Military Police making a "walking patrol" of a portion of the base, in course of which they came upon a jeep, parked with motor not running. Two men were seated in it, Facer at the wheel and Cahill in the passenger position. As the military police approached, the "passenger" was seen to be lighting a cigarette which, however, disappeared as they drew nearer. They requested ID cards and noticed a strong odor of marijuana. The two men were temporarily off duty for a half hour lunch period, after which they were to return to their jobs. Facer and Cahill were handcuffed, led away separately, and questioned separately, first being told of their *Miranda* rights. Cahill's answers went from denial that marijuana was smoked in the jeep, to the statement he would not incriminate himself. Facer stated that he had been smoking marijuana just before the police arrived. Facer also stated that Cahill did not smoke any marijuana on that occasion. On obtaining authority, the offi-

cers searched the vehicle and found a pair of hemostats with a suspected "roach" between the forks. This tested positively. Facer's eyes were very bloodshot and Cahill's slightly so. After some time, Facer and Cahill were returned to their workplace and they resumed work.

There is nothing in the record to suggest that criminal prosecution of Facer and Cahill was ever seriously considered but, on the other hand, nothing to show that Cahill was ever ordered to respond to questions about his conduct with a promise that his answers and their fruits would not be used against him in a criminal prosecution. *See Weston v. U.S. Department of Housing and Urban Development,* 724 F.2d 943 (Fed.Cir.1983); *Kalkines v. United States,* 200 Ct.Cl. 570, 473 F.2d 1391 (1973).

Facer rejected suggestions that he receive counseling, either at an Air Force operation on the base, or at a church off the base. He viewed himself as not drug dependent.

Under date of January 10, 1986, the Air Force served on Facer a Notice of Proposed Removal. It recited the facts above stated, and the following:

> Items 11a and 11b, Attachment 3 to AFR 40–750, have been used in determining the degree of the proposed remedy.

The text of the document thus referred to is in the appendix to this opinion. It will be noted that the regulation only states "typical" penalties and does not take away management's authority to impose removal in any case when it is appropriate; however, paragraph d limits recourse to removal to extreme cases perceived to warrant it, as there defined. Air Force Regulation 40–750, Attachment 3, does not suggest demotion as an appropriate sanction for *any* variety of drug abuse by employees.

Facer made oral and written responses. The written one admits his guilt and is in effect a plea for clemency. There is nothing in the record to show Facer ever, before trial, modified or retracted his statement to the police exonerating Cahill. Cahill was retained in duty status although his supervisor considered him so untrust-

worthy he accorded his work a degree of supervision and reinspection making his retention on duty a most uneconomical proposition for the government, even assuming the standard of safety of the aircraft Cahill worked on was maintained. The supervisor believed there was nothing to be done about it, evidently in view of the statements Facer and Cahill had made. Facer's response failed to serve its purpose inasmuch as his removal followed effective February 7, 1986.

A timely appeal to the MSPB followed, with a trial before Administrative Judge Kasic who made his "initial decision" under date June 26, 1986. Inasmuch as Facer continued to admit his guilt, the government proof of his guilt is of minimal interest and need not be discussed further. Since both Facer's able counsel, and the AJ, attach great weight to alleged disparity of penalty as between Facer and Cahill, we have thought it necessary to ascertain just how Facer handled this in his testimony. It was never transcribed, but we have listened to the tapes provided us by the MSPB.

According to what we may call the new Facer, it was Cahill on that December evening who suggested they go out and "smoke a joint." Cahill pulled a marijuana cigarette out of his pocket and lit up. They shared the cigarette after Cahill started it, but it was Cahill who was lighting up (again?) when the police approached. Facer, however, as he testified to the AJ, accepted responsibility for the cigarette, told the police there was no one else smoking, that he was smoking marijuana and Cahill was not. Why? "I just didn't feel it was up to me to implicate him. I figured he could own up on it himself." As no urine test was run, there was no clear and convincing evidence to refute Facer's exoneration of Cahill on December 5, suspicious though the circumstances were, and the foreman's feeling there was nothing to be done about Cahill is explained.

Facer acknowledged that some years earlier, while a marine, he had been obliged by lack of funds for his impending marriage, to resort to sale of LSD. Having unwisely accepted two undercover security agents as customers, he was court-martialed and sentenced to confinement at hard labor and a dishonorable discharge. By clemency of higher authority, Facer was allowed to complete his enlistment and receive an honorable discharge.

While in the course of his employment as an aircraft mechanic at the base, Facer had gone out from time to time to share a "joint" during the half hour lunch break, usually with someone else, not Cahill. His "high" lasted from an hour to two to four, depending on the purity of the marijuana and whether he had smoked the whole thing or shared it. These incidents were infrequent and only once or twice a year did they smoke on the base, four to six times in all. To the inevitable inference he had returned to work still high on several occasions, Facer attempted to show in great detail that his conduct could not have endangered the aircraft or the pilot because of the constant inspections, his working in the view of other workers, the fact any defective work would be clearly visible, etc. This testimony did not impress the AJ and we need not consider it further. The aircraft in question were F-4 military types capable of Mach 2 speed, i.e., twice the speed of sound.

Neither on direct nor on cross was Facer asked whether, between his release on December 5 and his trial before the AJ, did he make any effort to correct his initial exoneration of Cahill with what he now said was the truth.

Facer then called Cahill as a witness, but after conferring off the record with counsel, the AJ refused to hear him, to which counsel for Facer noted an objection. Some statement as to what was to be proved by Cahill must have been made, but if so, it was off the record. As petitioner wanted his testimony, it appears he must have expected testimony favorable to him. The AJ apparently thought Facer's own testimony left a situation where nothing Cahill could say would add any relevant fact not already established.

The final witness, called at the instance of the AJ, was a base personnel officer

who testified as to the status of drug control and testing programs at the base. At the time of Facer's and Cahill's arrest, no program of drug-use testing was in effect.

The AJ in his June 26, 1986, opinion said the sole issue for his resolution was the appropriateness of the removal penalty. He noted the MSPB had previously held in numerous cases that mere possession of marijuana on duty justified removal. He called it unthinkable that the public should have to bear the risk of a "high" employee working on these sophisticated F–4 fighter wing folds "essentially without close supervision." But he thought removal unreasonable because of the agency's past imposition of short suspensions for like offenses. The nonremoval of Cahill was an example of unwarranted leniency. The AJ agreed the agency thought its hands were tied as to Cahill, but he disagreed, pointing out the highly suspicious circumstances and the fact the agency did not have to prove guilt beyond a reasonable doubt, as in a criminal case. The agency must be forced to drop its failure to punish those who lie as severely as it does those who tell the truth. In effect, it seems as if the AJ was using the leniency he proposes towards Facer as a means of forcing the agency to be tougher on the Cahills and others whose cases he discusses. Yet, the "safety interest" mandates some harshness. Demotion seems to the AJ the answer: he passes by that AFR 40–750 makes no mention of demotion as a penalty for drug misuse. In fact, he seems to perceive no need to interpret the AFR at all. He thinks that safety requires more than the 5 days suspension that would otherwise be the maximum, a figure obviously derived from the figures in the AFR, item 11b, for a first offense of using or possessing marijuana on government premises. He holds Facer is a first offender despite his admission of past infractions. The Marine Corps conviction is "relevant but not persuasive" as to a potential for rehabilitation. The refusal to participate in the agency drug rehabilitation is explained by the fact Facer "simply felt he had no drug dependency," a circumstance we suppose probably exists with respect to a majority of those who actually do have a drug or alcohol dependency.

In view of his carefully reasoned opinion, of which the foregoing is a perhaps inadequate summary, the AJ proposed a 30–day suspension with a demotion. Both sides petitioned for review and the top board granted the agency's petition, denied Facer's, affirmed the agency's removal, and correspondingly modified the AJ's initial decision.

The top board's decision holds that none of the other cases, except Cahill's, are sufficiently similar to Facer's to establish a charge of disparate treatment. As to Cahill's, Facer himself prevented the agency from disciplining Cahill—and by testimony he himself later abandoned as false—so he is in no position to complain about the handling of Cahill's case. The board proceeds to repudiate the AJ's handling of the safety issue, or disregard of the agency mission, but comes to exactly the same conclusion the AJ did, *i.e.,* that the agency's aircraft mechanics cannot be allowed to get high on marijuana in their half hour lunch breaks. The real difference clearly is, what sanction is necessary to deter this misconduct, and in what cases other than Facer's. The board proceeds to justify departing from the AFR 40–750's 5–day maximum suspension on the authority of *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280, 305 (1981). It takes no notice of the clauses in the AFR itself which authorize exceeding the usual or customary penalty limits, but in carefully defined circumstances in the case of removal. Whether or not the agency is free to disregard its own regulation is left in much ambiguity.

### *Discussion*

#### I

■ We said in *Mings v. Department of Justice,* 813 F.2d 384, 390 (Fed.Cir.1987) this court "will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors." *See also Dominguez v. Department of Air Force,* 803 F.2d 680, 684

(Fed.Cir.1986) ("the court cannot and will not disturb a penalty unless it is unauthorized or exceeds the bounds of reasonableness because it is so harsh and unconscionably disproportionate to the offense that it amounts to an abuse of discretion, or where the record is devoid of any basis demonstrating reasonableness").

We note at the outset that the dichotomy presented by counsel for the petitioner, and the AJ, that Cahill is rewarded for lying, and Facer punished for telling the truth, is a false one. Facer is the typical recanting witness, with respect to Cahill's role; he says one thing on one occasion and another on another. As in many such instances, the AJ and the board had no way of knowing for sure, nor of course do we, when Facer was telling the truth and when he was lying, but he must have been lying on one occasion or the other. We may prefer his testimony before the AJ, if only because it was sworn, but it was he who had the bloodshot eyes on first arrest, and it was his jeep. If it was important to know which version was true, it was a dreadful mistake by the AJ to exclude the testimony of Cahill. The reason for exclusion, as stated by him, seems to have been that Facer's own conduct precluded him from complaining about leniency to Cahill, even if Cahill was guilty. Facer relied on this exclusion as one of the errors necessitating reversal in his petition for review. The matter was therefore before the board for resolution, but was not given any express notice. If Facer told the truth on December 5, Cahill was not guilty of any offense and should not have been disciplined, and therefore the AJ's subsequent criticism of the agency for not disciplining him was wholly misdirected. On the other hand, if he told the truth at the trial, the position of the agency is shown to be a strange one at best.

The board seems to have got itself in the position of making extended inquiries into one case, while adjudicating another, to establish or refute a charge of disparate treatment. The old law was that a person did not have a legally protected interest in the evenness of a misconduct penalty assessed on him, with that on others. *Jones v. United States,* 223 Ct.Cl. 138, 617 F.2d 233 (1980). *Jones* relied on respectable Supreme Court authority, *Butz v. Glover Livestock Commission Co.,* 411 U.S. 182, 93 S.Ct. 1455, 36 L.Ed.2d 142 (1973). *Jones* is cited and followed under present law by this court in *Villela v. Department of the Air Force,* 727 F.2d 1574 (Fed.Cir.1984), *Schapansky v. Department of Transportation,* 735 F.2d 477 (Fed.Cir.), *cert. denied,* 469 U.S. 1018, 105 S.Ct. 432, 83 L.Ed. 2d 358 (1984). *Cf. Yeschick v. Department of Transportation,* 801 F.2d 383 (Fed.Cir. 1986). *Rogers v. Department of Defense Dependents Schools,* 814 F.2d 1549 (Fed. Cir.1987) indicates a possible exception only if employees are *knowingly* treated differently. This obviously means differently in a way not justified by the facts, and intentionally for reasons other than the efficiency of the service. We think, therefore, that the extensive comparisons between Facer's case and others, indulged in both by the AJ and by the board, are of doubtful relevancy here, unless they lead to a conclusion of willful discrimination.

Cahill's case, however, may be regarded as part of the *res gestae* of Facer's misconduct. The AJ, in his opinion, seems to drop the view he expressed when he excluded Cahill's testimony. He seems implicitly to think that inquiry into disparate penalties is not one entirely within the control of the employee, and should not be overlooked merely because the employee caused it to occur. Rather, the AJ seems to assert for himself a role as monitor of the evenness of penalties regardless of the right, or lack of it, to complain of the employee whose case is under review. Where he perceives laxity in other cases, the AJ would require laxity in the case before him to force the agency to establish firmer standards for all cases and stick to them. A belief on the part of the AJ that the assignment of the case assigned him some undefined supervisory role over the agency's personnel practices, is further shown by his insistence—not that of counsel, but his own—on production of a personnel officer to testify about the agency's drug testing program, which apparently was nonexistent at that

base on the date of Facer's and Cahill's arrest.

The view of the top board is different respecting disparate leniency towards Cahill in that it holds that Facer's own major role in bringing it about absolutely preempts any complaint by him about it.

It would aid our review of this case on the issue of disparate treatment of Cahill if, with the help of Cahill's testimony on a remand, it became possible to determine and find as a fact when Facer was lying and when he was telling the truth. It would also help if we had a statement of the board's role, in general, with respect to allegations of disparate treatment of other erring employees, not parties, as the board views it. Is it only to protect the rights of the employee whose appeal is before it, or something else?

## II

■ Facer argued to the board, and here, that the regulation, AFR 40–750, Attachment 3, in the schedule of penalties, items 11a and 11b preclude the agency from imposing a penalty greater than a 5–day suspension. The notice of proposed removal states that items 11a and 11b "have been used in determining the degree of this proposed penalty," *i.e.*, removal. Whatever escape hatches Attachment 3 provides the agency, and it does provide some, they are not stated in items 11a and b. The notice does not refer to them or invoke them. If one, however, looks outside items 11a and 11b, one finds the following respecting removal:

> Before it [removal] is initiated, the facts and circumstances in the case must be carefully reviewed to ensure they support the conclusion that the employee has demonstrated an unwillingness or refusal to conform to the rules of conduct or has so breached the employer-employee relationship that other rehabilitation is not appropriate and removal is warranted for the offense.

The notice does not state that this review was made or, if it was, with what result. Neither the AJ nor the board has much of anything to say about any part of AFR

40–750 and both seem to contemplate with equanimity that an agency may ignore its own regulation of this character if it pays proper heed to the standards the MSPB has developed. The board says an agency table of penalties is "only one of the several guiding factors for determining the reasonableness of the penalty and must be considered in light of the other relevant factors."

Air Force Regulation 40–750, however, limits the penalty to a 5–day suspension only if the agency is dealing with a first offense. For a second or subsequent offense, removal is permissible if the preconditions quoted above are met. The parties seem to have adverted in a casual way to whether Facer is a first offender in view of his conviction in the Marine Corps for selling LSD, though the AJ discusses that conviction in reference to its bearing on Facer's possibility of rehabilitation, not on his status as a first offender. We do not think he would be regarded as a first offender in a criminal court. There is also a question whether one's first offense is the first one has committed, or the first in commission of which one is caught. In this case Facer readily admitted he had on previous occasions done exactly the same thing he was caught doing on December 5, 1985, and on other occasions, the only difference was he had gone off base to enjoy his "joint," but still during the half hour lunch interval, after which he had returned to work "high."

We are skeptical whether an agency can violate its own regulations placing express limits on its power to remove, or that the MSPB can exonerate the agency from complying with its own regulations, if the removal comports with MSPB ideas. However, we make no ruling on the question as it was not argued and may be rendered moot by a correct interpretation of AFR 40–750, Attachment 3, which, indeed, may not be a regulation at all.

We hold that the remand should include, besides the matter taken up in part I of this discussion, consideration of AFR 40–750, concerning whether it is just a handbook or is really written to fasten legal

consequences on the government; what is the meaning of "first offense" as applied to the facts; and whatever else may be relevant to the proper use of AFR 40–750 in adjudicating this case. *Fiorentino v. United States,* 607 F.2d 963 (Ct.Cl.1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), should be helpful in illustrating the problems courts have perceived in similar cases, to what extent agencies taking adverse actions are bound by internal handbooks, manuals, etc., what evidence of meaning and intent is acceptable, etc.

## III

The agency protested vehemently to the top board against the demotion, not because it was unauthorized by AFR 40–750, Attachment 3, but because it was not an effective means of procuring the added safety that the AJ agreed was necessary. If Facer was a source of danger in the higher grade, he was equally so in the lower. The agency explained the duties of the lower position, and the degree it would be supervised, in great detail. All this was mooted, of course, by the top board's restoration of removal as the penalty on other grounds. The board on remand may go further into the question of demotion as a recourse in such a case as this, if it becomes again pertinent. Here the table of penalties should have more significance than it was given. It seems to us there are conceptual as well as practical difficulties in forcing an agency, against its own judgment, to continue to employ an erring employee at a lower grade.

## Conclusion

The order of the board is vacated and the cause is remanded for further proceedings consistent with this opinion.

VACATED AND REMANDED.

## GUIDE TO DISCIPLINARY ACTIONS

NOTE: See Section F of this regulation for information concerning use of this guide and selection of appropriate penalties in disciplinary actions.

**1. Cause of Action Column:**

a. IT IS NOT NECESSARY TO STATE A CAUSE OF ACTION EXACTLY AS SHOWN IN THIS COLUMN. What is important is to state exactly what the employee did wrong, preferably without using legal terms suggesting crime. If such legal terms were used, it might be necessary to prove all the elements necessary to establish that the crime has been committed, including felonious intent.

b. Cause is best identified by a specific charge or label for the offense *if* that charge or label is relevant. BE CAREFUL TO SELECT A LABEL WHICH FITS THE FACTS AND NOT TO DISTORT THE FACTS TO FIT A SPECIFIED OFFENSE IN THE GUIDE.

**2. Typical Penalty Column.** This column does not dictate the penalty to be imposed for a particular (or comparable) offense; rather, it establishes the range of penalties within which the penalty imposed usually falls. Unless otherwise restricted, management may impose no penalty at all or has available a choice of severity of action ranging from oral admonishment to removal.

NOTE: See paragraph 4 of this document for information concerning employees in probationary or trial period, or in first year of current continuous service in the same or similar positions.

a. Oral Admonishment. An oral admonishment is a disciplinary action that is often adequate to effect the required correction or improvement, particularly when the employee has no previous history of violations. See paragraph 39c for the use of the oral admonishment in relation to this attachment.

b. Reprimand. A reprimand is a severe disciplinary action that should be adequate for many disciplinary situations which require an action more severe than an oral admonishment. It may be made more "severe" according to paragraph 14a(2).

c. Suspension. A suspension is a severe disciplinary action. Ordinarily, it is the final step in the disciplinary process before removal and is accompanied by a warning to the employee that a further violation of rules *could* result in removal (see paragraph 15a(1)).

(1) A suspension may *not* be imposed for indebtedness nor performance-related factors when the situation is nondisciplinary (see paragraph 10).

(2) Suspensions seldom should exceed 30 days unless the indefinite suspension provision of paragraph 16e(1) is used.

d. Removal. Removal is the most severe disciplinary action. Before it is initiated, the facts and circumstances in the case must be carefully reviewed to ensure they support the conclusion that the employee has demonstrated unwillingness or refusal to conform to the rules of conduct or has so breached the employee-employer relationship that other rehabilitation is not appropriate and removal is warranted for the offense.

| Cause of Action (Offense)<br>a. See first page of this attachment<br>b. See AFRs 30-30 and 40-735 for violation of conflict of interest regulations.<br>c. Review paragraphs 1, 9, 10, section F, and attachment 5 before proceeding. | | Typical Penalty<br>a. See first page of this attachment.<br>b. See paragraphs 13, 14, 15, 16, and attachment 1. | |
|---|---|---|---|
| | First Offense | Second Offense | Third Offense |
| 1. Failure to honor valid debts or legal obligations (see AFR 40-735).<br>NOTE: There is no offense unless (a) the validity of the debt is established; (b) there has been a failure to either arrange for or comply with a repayment schedule; and (c) there is a *current* complaint from the *creditor*. Suspension as a penalty is not authorized. Maximum penalty for third offense is reprimand and for fourth offense; reprimand with the added warning that a "continuation of offenses could result in removal." | Reprimand | Reprimand | Reprimand |

|  | First Offense | Second Offense | Third Offense |
|---|---|---|---|
| Abuse Prevention and Control Program, are met. Close consultation with the CCPO, social actions office, and the base medical services is required. |  |  |  |
| 9a. Gambling during work-hours. | Reprimand | Reprimand to 5-Day Suspension | Reprimand to Removal |
| 9b. Promotion of or assisting in operation of organized gambling on duty or on government premises. | Reprimand to Removal | 5-Day Suspension to Removal | 10-Day Suspension to Removal |
| 10a. Loafing or sleeping on duty. | Reprimand | Reprimand to 14-Day Suspension | Reprimand to Removal |
| 10b. When such action may result in injury, loss of life, or damage to property. | Reprimand to Removal | 5-Day Suspension to Removal | 10-Day Suspension to Removal |
| 11a. Possessing, transferring, selling, or using drug abuse paraphernalia as defined in AFR 40-792. | Reprimand | Reprimand to 14-Day Suspension | Reprimand to Removal |
| 11b. Use or possession of marijuana, a narcotic, or dangerous drug on government premises or on duty. Reporting for duty while under the influence of marijuana, a narcotic, or dangerous drug. | Reprimand to 5-Day Suspension | 5-Day Suspension to Removal | 14-Day Suspension to Removal |
| 11c. Being on duty so impaired by marijuana, a narcotic, or dangerous drug as to be unable to perform duties properly or to be a hazard to self or others. | Reprimand to Removal· | 14-Day Suspension to Removal | Removal |
| 11d. Unauthorized sale or transfer of marijuana, a narcotic, or dangerous drug on government premises, or during the duty hours of any person involved. NOTE: A dangerous drug is one so defined by the Attorney General of the United States. Marijuana is any intoxicating product of the hemp plant, cannabis (including hashish), or any synthesis of them. When a narcotic, dangerous drug, or marijuana has been prescribed for medical purposes under an appropriate authority, its use as prescribed is not an offense under this regulation. The penalty selected should consider the offender's status as an experimenter, user, or addict and should, whenever possible, contribute to his or her rehabilitation and recovery. Actions involving those offenses must be carefully evaluated to ensure that the requirements of AFR 40-792 are met. Coordination with the CCPO, social actions office, base medical services, and judge advocate office is required. | Reprimand to Removal | Removal |  |

---

MAYER, Circuit Judge, dissenting.

Facer was caught and admitted to smoking marijuana during a half-hour lunch break from his duties as a mechanic on F–4 high performance aircraft (capable of Mach 2); he admits to prior uses of marijuana during breaks in his duties; he refuses drug counseling; he has a conviction for sale of LSD. He is untruthful: he exonerated a co-worker caught with him of any blame in the marijuana incident but, before the Board, changed his story to blame the co-worker for instigating the incident, providing the marijuana, and smoking with

him. Notwithstanding that his exoneration dissuaded the agency from taking any action against the co-worker, Facer now complains about the disparity between his treatment and his co-worker's. In these circumstances, the agency and the Board thought removal was an appropriate penalty. I would affirm.