NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3335

JOSEPH F. MCLEOD,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

Dennis L. Friedman, of Philadelphia, Pennsylvania, for petitioner.

Scott D. Austin, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3335

JOSEPH F. MCLEOD,

Petitioner,

v.

DEPARTMENT OF THE TREASURY,

Respondent.

Petition for review of the Merit Systems Protection Board in PH0752070640-I-1.

_____

DECIDED:  June 17, 2009
_____

Before BRYSON, GAJARSA, and PROST, <u>Circuit Judges</u>.

PER CURIAM.

This case concerns whether the Internal Revenue Service ("IRS") appropriately removed an employee who accessed confidential taxpayer information without authorization or business purpose.  Joseph McLeod petitions for review of the final decision of the Merit Systems Protection Board ("Board"), which affirmed the IRS's removal decision.  <u>McLeod v. Dep't of the Treasury</u>, No. PH0752070640-I-1 (M.S.P.B. Mar. 13, 2008), <u>review denied</u>, 109 M.S.P.R. 603 (2008) (table).  Because the Board's findings are supported by substantial evidence, and its decision is not arbitrary or capricious, we <u>affirm</u>.

BACKGROUND

Mr. McLeod began working at the IRS in 1994. He was removed from his position as a Tax Examining Technician, GS-07, on September 6, 2007, because he had accessed taxpayer data without authorization or business purpose through the Integrated Data Retrieval System ("IDRS") on fifteen occasions from 1997 to 2000. Mr. McLeod did not dispute the charges, and the Board found that the taxpayers whose files were accessed had not consented to that access. Mr. McLeod had no prior disciplinary record with the IRS, and his work received an "exceeds, fully successful" evaluation.

Unauthorized access and inspection of taxpayer records ("UNAX") is treated very seriously by the IRS. Mr. McLeod attended annual training sessions outlining the relevant access policies and the potential penalties if those policies were violated. Additionally, at the beginning of every session the IDRS program admonishes its users that unauthorized access is prohibited. The table of penalties used by the IRS indicates that removal is the appropriate penalty for a first UNAX offense in the absence of consent from the taxpayer whose records were accessed.

The deciding official, Cheryl Cordero, Director, Philadelphia Compliance Services, testified that she had considered the relevant Douglas factors, and signed a form listing each factor. Although Ms. Cordero viewed several factors (including his length of service and previously clean disciplinary record) as weighing in Mr. McLeod's favor, she nevertheless concluded that removal was the appropriate penalty.

Mr. McLeod appealed the severity of the penalty to the Board, and an Administrative Judge issued an initial decision upholding the removal. The full Board denied Mr. McLeod's petition for review, and the initial decision became final. The

Board had jurisdiction pursuant to 5 U.S.C. § 7701 (2006). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(9) (2006).

DISCUSSION

We will set aside a decision of the Board if it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2006). The Board should set aside an agency's selected penalty "[o]nly if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the limits of reasonableness." Douglas v. Veterans Admin., 5 M.S.P.R. 280, 306 (1981); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 5 (2001) (citing application of the Douglas factors as "the Board's settled procedures"); Lachance v. Devall, 178 F.3d 1246, 1251 (Fed. Cir. 1999) ("the abuse of discretion standard . . . pertains to review of agency penalty determinations, [and] we will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all factors" (internal quotation marks omitted)).

Mr. McLeod first challenges his removal as inappropriately harsh, and the result of a failure to fully consider the Douglas factors. In particular, he argues that Ms. Cordero improperly imposed the penalty of removal as an automatic response to his UNAX violation, based on her testimony that she could not think of any circumstances in which she would not impose the penalty of removal if a UNAX violation occurred without taxpayer consent.[1] This argument is unavailing. There is no requirement that the

_____

[1]  UNAX violations can occur either because the employee browses files for

deciding official be able to imagine circumstances under which mitigation would be appropriate. Nor is it improper for there to be offenses for which such mitigating circumstances would have to be extraordinary, and therefore hard to imagine.

In this case, there is more than substantial evidence to support the Board's determination that Ms. Cordero properly considered the relevant Douglas factors rather than applying a per se rule. Ms. Cordero specifically testified that she had considered the Douglas factors before removing Mr. McLeod. That testimony explains which factors weighed for or against Mr. McLeod, indicating that each factor was properly considered. Ms. Cordero testified that certain factors, such as his lack of a prior disciplinary record, "weighed quite well in his favor." J.A. 38. She further testified that she considered the mitigating factors Mr. McLeod put forth—taxpayer consent and diabetes—and found them to be untrue and irrelevant, respectively. On the other hand, Mr. McLeod told investigators that the reason he had not committed a UNAX violation since 2000 was that there had been no need to do so. Ms. Cordero relied on that statement in concluding that Mr. McLeod's supervisor would have less confidence in Mr. McLeod, and in concluding that "his ability to be rehabilitated was left open for question." J.A. 39. On balance, she determined that removal was the appropriate penalty. Thus, it is clear that the agency did seriously consider the factors, and concluded that removal was the appropriate penalty. The decision to remove someone who is entrusted with access to confidential information based on a misuse of that access does not clearly exceed the limits of reasonableness.

---

his or her own purposes (e.g., curiosity about a friend), or because the employee is giving favored treatment to friends by helping them access their tax records. Neither is permitted, but in the second case, the taxpayer has authorized the employee to access the file.

Mr. McLeod next argues that he was treated unfairly because Ms. Cordero only suspended a similarly-situated co-worker who had committed a UNAX violation. The Board views disparate treatment as an affirmative defense, which Mr. McLeod must prove by preponderant evidence. See, e.g., Wentz v. U.S. Postal Serv., 91 M.S.P.R. 176, 187 (2002); see also Facer v. Dep't of Air Force, 836 F.2d 535, 539 (Fed. Cir. 1988) (indicating an exception to the general rule that one employee has no interest in how another was penalized applicable when the employee was treated "differently in a way not justified by the facts, and intentionally for reasons other than the efficiency of the service"). Under the Board's rule, Mr. McLeod must establish that the comparator employee was in the same work unit, had the same supervisors, and engaged in substantially similar misconduct. Wentz, 91 M.S.P.R. at 187.

Here, Mr. McLeod directs our attention to an employee who had been contacted by two taxpayers (A and C), requesting that he access their files. A third taxpayer (B) had not consented to access, but as he was the ex-spouse of A and had filed jointly with A, his social security number had been given to the employee by taxpayer A and taxpayer B's records had been accessed as well. The comparator employee's UNAX violation thus did not violate the privacy of A and C, but rather gave A and C preferential treatment—they received enhanced access to IRS records as compared to a taxpayer who did not know an IRS employee. Ms. Cordero specifically found that with respect to taxpayer B, who did not consent to the access, the comparator employee had "not knowingly and willfully violate[d] his right to the privacy and confidentiality of his return information." J.A. 27. The employee was suspended without pay for 30 days.

Comparing the facts in that case to those in Mr. McLeod's, the Administrative

Judge found that Mr. McLeod had failed to prove disparate treatment by preponderant evidence. Because the comparator employee had (or believed he had) taxpayer consent to his access and substantial evidence supports the finding that Mr. McLeod did not, the Board appropriately found that the two employees' misconduct was not substantially similar, and thus there was no disparate treatment when Mr. McLeod received a more severe penalty. The primary problem with unauthorized access is that taxpayers cannot feel secure that their records will not be misused by tax officials. When a taxpayer has consented to access, this concern is mitigated, and the problem instead is that the tax official is misusing access to assist friends or family. It was not arbitrary or capricious to use taxpayer consent as a distinguishing fact. The Board's decision is affirmed.

No costs.