983 F.2d 1088
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Wilbur J. ELDRIDGE, Petitioner,
v.
DEPARTMENT OF AGRICULTURE, Respondent.
 No. 92-3360.
 United States Court of Appeals, Federal Circuit.
 Nov. 25, 1992.
 
 Before PLAGER and SCHALL, Circuit Judges, and CURTIN, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Wilbur J. Eldridge appeals from the decision of the Merit Systems Protection Board sustaining his removal from the Agriculture Marketing Service, an agency of the United States Department of Agriculture, where he was employed as a livestock market news reporter. Eldridge v. Department of Agriculture, No. CH 0752-92-0011-I-1 (January 31, 1992). We affirm the decision of the Board.
 
 A.
 
 2
 Mr. Eldridge's removal from the agency was based on two charges:
 
 
 3
 1. Entering into an improper loan transaction with a member of the livestock trade and/or related conduct prejudicial to the best interest of the service; and
 
 
 4
 2. Making false and/or misleading statements to an official supervisor.
 
 
 5
 The first charge was based on a transaction between Mr. Eldridge and James F. Merritt. Mr. Merritt was a Manager for the Central Livestock Association, a computerized livestock trading system which depends on the Agriculture Marketing Service for accurate reports on prices of livestock and other agricultural commodities. In May of 1990, Mr. Eldridge asked Mr. Merritt to give him a check for $800.00 in exchange for Mr. Eldridge's check, which Mr. Merritt was not to attempt to negotiate until the following week, by which time Mr. Eldridge was to have deposited funds to cover the check. Mr. Merritt agreed. However, when Mr. Merritt subsequently sought to deposit the check, Mr. Eldridge's bank refused to honor it. In fact, Mr. Eldridge had stopped payment on the check on May 22, 1990, and had shortly thereafter closed the account on which it was drawn. In August of 1990, after his attempts to contact Mr. Eldridge were unsuccessful, Mr. Merritt went to Mr. Eldridge's supervisor at the Agriculture Marketing Service and told him about his transaction with Mr. Eldridge. The supervisor ordered Mr. Eldridge to repay the $800.00 to Mr. Merritt by the close of business on August 3, 1990, which Mr. Eldridge did. Later, Mr. Eldridge paid Mr. Merritt interest and overdraft charges.
 
 
 6
 Several witnesses testified that to perform effectively, a livestock market news reporter must have the confidence of persons in the livestock trade, and that therefore personal financial transactions with professional acquaintances such as Mr. Merritt are improper. In this regard, the agency provided Mr. Eldridge with a copy of Agency Directive 365.2, "Conflicts of Interest and Outside Employment," which explained this policy, and Mr. Eldridge signed a certification that he had read the directive. Testimony also revealed that Mr. Eldridge's supervisors were concerned that public knowledge of his financial problems might lead unscrupulous people to attempt to bribe him to influence his reports.
 
 
 7
 The second charge, making false or misleading statements, was based on two separate incidents. First, between the time that Mr. Eldridge entered into the check exchange transaction and the time that Mr. Merritt discovered that the check had not been honored, Mr. Eldridge's supervisors specifically asked him to advise them of any legal or financial situation involving him that might reflect badly on the Marketing News Service. In response, Mr. Eldridge assured his supervisors that he "had everything well in hand and there would not be additional problems." The agency charged that when Mr. Eldridge made these statements, he knew or should have known that the check he had given to Mr. Merritt would be dishonored. Second, Mr. Eldridge, in asking for time off to appear in court, told his supervisor several different times that he was going there to "take care of a ticket." In fact, Mr. Eldridge had been charged with a felony, Grand Theft Auto. Mr. Eldridge offered no testimony or other evidence to rebut the charge of false or misleading statements.
 
 
 8
 The Board found that Mr. Eldridge's financial misconduct had a "direct and predictable impact on the level of perceived integrity both within and outside the agency that is required of the appellant in the performance of his duties as a Reporter for the Market News Service." Eldridge, supra, at 7. The Board found that the first charge was supported by a preponderance of the evidence.
 
 
 9
 After concluding that the charge of making false statements also was supported by a preponderance of the evidence, the Board concluded that Mr. Eldridge's actions amounted to serious misconduct which eliminated the degree of trust necessary for Mr. Eldridge to perform his reporting duties, and that removal would promote the efficiency of the service.
 
 
 10
 Mr. Eldridge concedes that the events described above took place. He argues, however, that the Board's findings that he knew the Merritt transaction was improper, that he intended to mislead his supervisors, and that trust in him had been eroded, are unsupported by the evidence. He also argues that the penalty of removal is too harsh and will not promote the efficiency of the Agriculture Marketing Service.
 
 B.
 
 11
 Our review of the Board's decision is limited to inquiring into whether its findings are supported by "substantial evidence." 5 U.S.C. § 7703(c)(3).
 
 
 12
 Clearly, the findings of the Board which Mr. Eldridge challenges are supported by substantial evidence. With respect to the first charge, it was proper for the Board to consider circumstantial evidence of Mr. Eldridge's intent. See Hewlett-Packard Co. v. Bausch & Lomb Inc., 882 F.2d 1556, 1562, 11 USPQ2d 1750, 1755 (Fed.Cir.1989). As seen above, Mr. Eldridge received a directive from the agency warning him about conflicts of interest and he signed a certification stating that he had read the directive. He therefore knew or should have known that to ask a livestock trade colleague who relied on the Market News Service to "float" him a loan was improper. Even assuming that this realization escaped him, he must have realized that stopping payment on the check and closing the account would have the effect of depriving Mr. Merritt of $800.00 well past the agreed-upon time of payment, and that this was improper, particularly since he failed to tell Mr. Merritt what he was doing.
 
 
 13
 As far as the second charge is concerned, the Board had before it uncontroverted evidence that Mr. Eldridge's statements to his supervisors that he was in control of his finances and that his court appearance concerned a ticket were false. Mr. Eldridge's insistence that, at the time he made the statement concerning his finances, he honestly believed his financial problems were under control is not credible in light of his having recently stopped payment on a check that purported to repay an $800.00 debt, already overdue. By the same token, even if Mr. Eldridge, a layman, honestly believed the term "ticket" could describe his felony charge, his statement was still calculated to conceal his legal problem from his supervisors. We do not review the Board's findings as to witness credibility, Hambsch v. Dep't. of the Treasury, 796 F.2d 430, 436 (Fed.Cir.1986), and we cannot say that the Board's findings with respect to the second charge are unsupported by substantial evidence.
 
 
 14
 The Board's finding that trust in Mr. Eldridge was eroded also is supported by substantial evidence. The Board heard testimony regarding the high standard of integrity required of market news reporters. The Board also had before it memoranda written by Mr. Eldridge's supervisors. One stated, "Mr. Eldridge's financial situation has effected (sic) his credibility with Market News, his supervisors, and members of the livestock industry." In another, his supervisor reported, "There must be more to the car situation but Jim is not saying anything else," referring to the auto theft charge. The memo went on to explain that Mr. Eldridge was being removed from "futures" work due to possible conflicts. These documents support a finding that Mr. Eldridge was no longer trusted.
 
 
 15
 Finally, the Board did not err in sustaining the penalty of removal. The evidence shows that the agency considered the appropriate factors from Douglas v. Veterans Administration, 5 M.S.P.R. 280, 305-6 (1981), including Mr. Eldridge's twenty-four years of service and the fact that he had no prior disciplinary problems. The Board concluded that, "in light of the agency's compelling interest in avoiding conflicts on the part of its financial reporters, and in upholding the integrity of its financial reporting functions," removal was not unreasonable. Mr. Eldridge has failed to show that, in imposing the penalty of removal, the agency abused its discretion. Schapansky v. Department of Transportation, 735 F.2d 477, 484 (Fed.Cir.), cert. denied, 469 U.S. 1018 (1984).
 
 
 16
 The decision of the Board is affirmed.
 
 
 
 *
 The Honorable John T. Curtin, Senior United States District Judge, Western District of New York, sitting by designation